————o————

CONSTANTINE MAGUIRE *vs.* THE STATE SAVINGS ASSOCIATION, Respondent, and THE COUNTY COURT OF ST. LOUIS COUNTY, Appellant.

1. *Revenue—Tax bills on personalty under statute of* 1865—*Interest on, extortion— Action against collector—Claim of county court—Principal and agent.*—Under the statute of 1865 (Gen. Stat. 1865, p. 122, §§ 84, 51 and 26), delinquent tax bills on personalty did not bear interest, and when the collector received the same and retained it long after his term of office expired, he was held guilty of extortion, regardless of his motives. And it was held further, that where the party taxed made vain application for abatement of the interest, and paid it under fear and threat of levy by the collector, an action would lie for the interest so obtained. And in such state of facts, on interpleader in the circuit court between the party having paid the same and the county court, the latter can have no claim at law or in equity. It could not be claimed, as between himself and the tax payer, that the collector was agent of the county,

and that payment to him was in effect payment to the county, for such relation only applies to lawful transactions.

## *Appeal from St. Louis Circuit Court.*

*Thomas C. Reynolds*, for Appellant, cited Walker vs. St. Louis, 15 Mo., 563 ; Christy's Adm'r vs. St. Louis, 20 Mo., 143 ; State vs. Powell, 44 Mo., 436 ; Hill. Tax., pp. 421–4, 449–51 ; Fellows vs. School, 39 Me., 559 ; Dow vs. Chicago, 11 Wall., 108 ; Miss. Co. vs. Jackson, 51 Mo., 23 ; Hill. Tax., 423, § 92*b*. ; Brown vs. Harris, 52 Mo., 307.

*Noble & Orrick*, for Respondent, cited Gen. Stat., 1865, ch. 13, §§ 26, 58 and 84 ; Falconer vs. Higgins, 2 McLean, 212 ; Cooley Const. Lim., 2d ed., 266 ; Goggins vs. Turnipseed, 1 S. C., (N. S.) 180 ; Claflin vs. McDonough, 33 Mo., 412 ; Smith vs. Redfield, 27 Me., 145 ; Preston vs. Boston, 12 Pick., 7, 14 and 15 ; Sumner vs. Dorchester, 4 Pick., 361 ; Joyner vs. School Dist., 3 Cush., 567 ; Dakotah vs. Parker, 7 Minn., 273 ; Mayor of Balt. vs. Leffenower, 4 Gill., 425.

Sherwood, Judge, delivered the opinion of the court.

This proceeding in its origin was an action for money had and received. It was brought in 1873 by the State Savings Association against Constantine Maguire, former collector of St. Louis county, for the recovery of $10,372.54, alleged to have been illegally collected by him in 1871, when acting in the before mentioned official capacity, and converted to his own use. The above sum was collected as interest on certain tax bills amounting to $25,593.60, assessed against certain personal property of the association, for the years 1865–66 and 1867. Pending the action thus brought, the county court of St. Louis county, as is alleged, made claim to the money so collected, but never accounted for. Whereupon Maguire filed his petition in the nature of a bill of interpleader, praying that the association and the county court be required to interplead in order to the determination of the question to whom the money belonged. This was accordingly done, and

the court, on evidence adduced, found and decreed for the association. holding it entitled to recover the money for which it had originally sued.

The case thus presented involved two questions: 1st, whether the tax bills referred to bore interest after the occurrence of delinquency ; 2d, if they did not bear interest, whether the interest was collected under such circumstances as to authorize its recovery by the association.

In relation to the first point no doubt is entertained. An examination of section 84, p. 122, Gen. Stat., 1865, the law in force at the time the taxes referred to had accrued, will clearly show that, while the legislature with special care provided that the taxes on land and town lots " should, if not paid, bear ten per cent: interest from the first day of January, etc. ;" yet not the slightest mention is made in that section as to any interest by way of penalty . in consequence of the nonpayment of taxes due on personalty.

The legislature, in thus specially mentioning and providing for interest on land tax, must be presumed to have had in contemplation the whole matter of affixing penalties for failure to pay taxes at the appointed time, and therefore intentionally negatived the accruing of interest on any species of property other than real. And this presumption obviously accords with the familiar maxim of such frequent recognition in statutory construction : *expressio unius exclusio alterius.*

And there is nothing in section 51, nor in other sections of the same chapter, at all indicative of a legislative intention to supply any supposed omission in section 84. But in addition to the reasons already urged, one of perhaps equal cogency is found in the reflection, that the sale of land for the nonpayment of taxes could not be immediately accomplished ; while, by the provisions of section 26 of the same chapter, collectors were urged to diligence, and were empowered " to seize and sell the goods and chattels of the person liable for the taxes, in the same manner as goods and chattels are. or may be, required to be seized and sold under execution issued on judgment at law. and no property shall be exempt from seizure and sale for taxes, etc."

Armed with such powers, no necessity, it seems, would exist for delay, so far as concerns taxes due on personalty, and if no delay, then, evidently, no necessity for interest by way of penalty. Whether the act under discussion be supported by reason or otherwise, is, however, a matter with which we have no concern, as we can by judicial construction, neither enlarge the penalties which it imposes on the one hand, nor diminish them on the other.

Section 58 of the same chapter, to which reference has been made, makes provision for the "full compensation" for the services of the collector, and, therefore, cuts off any possible inference to be drawn, that the law had left a margin, whereby that official could, under the euphemistic head of "perquisites," appropriate to his own use a portion of the monies collected. This being the status of the law applicable to the case before us, it would be difficult to arrive at any other conclusion, but that the money collected in excess of that really due was collected without authority of law, and extorsively obtained, and if this was done wilfully and corruptly, the offense of extortion was complete; for extortion is defined as "the taking of money by an officer, by color of his office, either when none at all is due, or not so much is due, or where it is not yet due." (Coke Litt., 368*b*; Wagn. Stat., 488, §§ 19, 20.)

The preceding observations bring us to the second point proposed for determination, in respect of which we deem it unnecessary to discuss the question so earnestly pressed upon our attention, whether the facts of this case constitute duress in its strictly technical sense. And we refrain from this discussion for the following reasons: The testimony of Mr. Parsons, the president of the association, shows that he had applied in vain to the county court for an abatement of the interest complained of; and shows also, with sufficient clearness, that the money was unwillingly and compulsorily paid—paid to one seemingly clothed with power to seize and sell goods, etc., for the payment of the illegal demand, and paid under fear that such unjust demand would be enforced.

In Wolfe vs. Marshal (52 Mo., 167), Judge Wagner declared, as the result deducible from many authorities, that payment will be considered involuntary when made to a party armed with apparent authority to seize upon either the person or goods, and the payment is made to prevent the threatened seizure.

Such illegal exactions furnish ample ground for the maintenance of an action for money had and received, constituting, as they do, what Mr. Justice Woodbury in Maxwell vs. Griswold (10 How., 242), very aptly terms "moral duress." The parties in these cases do not treat with each other on equal terms, the money being exacted *colore officii*. There are numerous authorites which give utterance to the same doctrine. (2 Chit. Contr., 11th Am. Ed., 943 ; Ripley vs. Gelston, 9 Johns., 201 ; Quinett vs. Washington, 10 Mo., 53 ; Snowden vs. Davis, 1 Taunt., 358.)

Again, it is quite clear from previous observations, that Maguire was not entitled to the money in dispute, and his course in the premises was clearly illegal and extortionate, no matter what views he entertained, nor what motives prompted him in collecting and retaining in his possession the money long after the expiration of his official term. The money being unlawfully obtained, the county court could certainly have no equitable right to it, and hence, could have no standing in a court of equity, when asserting a claim to money obtained by an infraction of law. No equitable demand can be built on such a foundation, or find recognition in a court of conscience. And a court of that character, which from its very organization intuitively abhors and repudiates every symptom and semblance of oppression, will frequently interfere where undue advantage has been oppressively obtained, although under circumstances not constituting "legal duress." (Piel vs. ———, 16 Ves., 156 ; Lady Strathmore vs. Bowes, 2 Bro. C. C., 345 ; 1 Chit. Contr., 273.)

And here the opportunity was distinctly afforded for such interposition, as the court below had the disputed fund immediately within its grasp, and awaiting its disposition in

accordance with well settled principles long recognized in equity jurisprudence, and was directly called on as a court of chancery to declare to whom of the interpleaders the money, in equity and good conscience, belonged. Under these circumstances, no hesitancy, it would seem, could, on the evidence adduced, attend the deliberations of the chancellor, or retard the prompt arrival at the result reached.

But there is yet another element in this case which cannot be ignored. As before stated, the money in litigation was never paid over by the collector. This was something which had actually occurred in all the cases cited from our own reports, by counsel, with one exception, to be presently adverted to. Of course, no intimation is given as to what conclusion we should come, did the present instance present the same feature.

It may be objected, that the payment to the collector was, in effect, one to the principal for whom he was apparently acting, and that, therefore, the payment must be considered as made to that principal. But it should be recollected, that the relation ordinarily existing between principal and agent only appertains to transactions which are lawful, because the law will not intend the existence of this relation in transactions of a different complexion. (Sto. Ag., § 11.) And though the doctrine of estoppel might possibly apply, as ruled in Mississippi Co. vs. Jackson (51 Mo., 23), as between the collector and the county, and thus prevent a denial on his part of the agency, yet this doctrine could not be successfully invoked, especially in a case like the present, to prejudice the right of the association, and estop it also from asserting its ownership of the sum in question.

Viewed then in any light, the decree of the court below commends itself to our approval, and is accordingly affirmed. The other judges concur, except Judge Vories, who is absent.