ALEXANDER S. BUCHANAN, Plaintiff in Error, *v.* DAVID H. SAHLEIN ET AL., Defendants in Error.

February 15, 1881.

1. Where a payment of an illegal demand is made by one not under duress, and without an urgent necessity, the money so paid cannot be recovered back.

2. The duress which will enable one to avoid his contract and recover money paid must be threats or actual violence.

3. Duress by threats and duress of imprisonment defined.

4. Where it is sought to recover back money paid under a claim of right, and the petition does not set forth facts which constitute legal duress, the facts will neither support an action for damages nor an action in *assumpsit* for money had and received, and the petition is demurrable as not setting forth constitutive facts.

ERROR to the St. Louis Circuit Court, LINDLEY, J.
*Affirmed.*

JOHN P. ELLIS and HENDERSON & SHIELDS, for the plaintiff in error: The threat of unlawful imprisonment constitutes duress *per minas.* Lord Coke says the fear of imprisonment is enough. — 2 Inst. 433; Co. Lit. 253 b. And so the rule has been understood ever since that time. — Vin. Abr., tit. "Duress," B, pl. 23; 2 Com. Dig., tit. "Pleader," W, pl. 20; Bac. Abr., tit. "Duress," A; Chitty on Con. (ed. 1839) 168; 13 Me. 146; 17 Me. 338; 1 Cow. Tr. 264. To constitute duress *per minas,* there need only be threats of that kind of imprisonment which, if carried into execution, would result in duress of imprisonment. Illustrations of duress. — *Watkins* v. *Baird,* 6 Mass. 506; *Richardson* v. *Duncan,* 3 N. H. 508; *Davis* v. *Luster,* 64 Mo. 43; *Bush* v. *Brown,* 49 Ind. 573; *Brown* v. *Pierce,* 7 Wall. 214; *Baker* v. *Morton,* 12 Wall. 140; *Eddy* v. *Herrin,* 17 Me. 338; *Alexander* v. *Pierce,* 10 N. H. 494; *Schultz* v. *Culbertson,* 46 Wis. 313; *Taylor* v. *Jacques,* 116 Mass. 291. Although the facts do not disclose a case technically amounting to legal duress, yet there

is shown such compulsion or moral duress as to take away the voluntary consent necessary to a valid act or contract.— *Davis* v. *Luster*, 64 Mo. 43 ; *Moses* v. *McFarlen*, 2 Burr. 1012 ; 2 Story's Eq. Jur. 239.

GLOVER & SHEPLEY, with E. T. ALLEN and SAMUEL KNOX, for the defendants in error : Payment is not made under duress unless made to redeem the person or property from actual existing duress. — *Radich* v. *Hutchins*, 95 U. S. 210 ; *Thompson* v. *Lockwood*, 15 Johns. 256 ; *Fuller* v. *Green*, 26 Mich. 70 ; *Smith* v. *Redfield*, 27 Me. 145 ; *Wolff* v. *Marshall*, 52 Mo. 167 ; Story on Con., sect. 523. Lawful imprisonment is no duress. — *Eddy* v. *Herrin*, 17 Me. 338. Consequently, a threat of lawful imprisonment is no duress. Duress by threats only exists when the threatened violence is such that the law affords no protection. — *Claflin* v. *McDonough*, 33 Mo. 412 ; *Knoop* v. *Hyde*, 10 Barb. 80 ; *Harmon* v. *Harmon*, 61 Me. 227 ; *Burr* v. *Burton*, 18 Ark. 233 ; *Russell* v. *McCarty*, 45 Ga. 97 ; *Fulton* v. *Hood*, 34 Pa. St. — ; *Davis* v. *Luster*, 64 Mo. 43. The following are cases in which there were threats of prosecution, but no step taken towards one, no process issued, no assertion of a present power to avert, consequently no immediate danger, no reason to fear any, and in which it was held there was no duress *per minas*. — *Miller* v. *Miller*, 68 Pa. St. 486 ; *Plant* v. *Gunn*, 2 Wood C. Ct. 372 ; *Landa* v. *Obert*, 45 Texas, 539, 548 ; *Harmon* v. *Harmon*, 61 Me. 227 ; *Mayhew* v. *Insurance Co.*, 23 Mich. 105 ; *Russell* v. *McCarty*, 45 Ga. 197 ; *Davis* v. *Luster*, 64 Mo. 42. In the following cases process was sued out, but there was no abuse of the process, and it was held there was no duress. — *Meek* v. *Atkinson*, 1 Bailey, 84 ; *Shommer* v. *Farwell*, 56 Ill. 542 ; *Feller* v. *Green*, 26 Mich. 70 ; *Eddy* v. *Herrin*, 17 Me. 338 ; *Holmes* v. *Hill*, 19 Mo. 159.

BAKEWELL, J., delivered the opinion of the court.

The petition in this case states, in substance, that defend-

ants, on October 12, 1877, conspired together for the purpose of injuring plaintiff and extorting money and proprety from him by false and fraudulent pretences; that they inveigled him into the back office of Glover & Shepley, in St. Louis, and then and there locked the door, so that he could not escape, and then and there, with the intent of extorting the money from him, charged him with stealing from their store in St. Louis, and falsely stated to him that they had full proof of his crime in the employees of their store, and then and there threatened immediately to arrest and imprison plaintiff for a felony, and to prosecute him and put him in prison, if he did not immediately pay over to defendants $10,000; that he had been for a number of years in the employ of defendants Sahlein and Singer, as salesman and confidential clerk, had been always honest and faithful to them, and of good repute; that he was overwhelmed and totally unfitted, by the suddenness and enormity of the charge, from understanding what he was saying and doing, and begged defendants to allow him to consult his friends; but they refused, saying that if he did not then and there pay them $10,000 they would arrest and imprison him for a felony, and ruin him and his family, and destroy the good name for honesty which he had acquired.

Defendants stated to plaintiff that they had full proof of all facts necessary to show plaintiff's guilt; that he had been stealing from them for ten years; that he must make good all the losses of Sahlein, Singer & Co. during that time, or they would expose him and send him to prison. Plaintiff protested his innocence, and asked them to allow him to consider the matter until morning, which they refused. Plaintiff was frantic with fear, and believing that defendants would charge him with theft, arrest and imprison him as they threatened, and ruin his good name and reputation, and being totally deprived of his judgment and reason, and not knowing to what extent the cupidity of

defendants would lead them to testify against him, and finding that escape was impossible, submitted to their demands, and paid over to them Ozark Iron-Works bonds of the value $5,000, and also executed to them his note for $5,000, and, to secure the same, executed a deed of trust on real estate, and delivered these to defendants.

The petition further alleges that plaintiff was all that night crazed with fear; that he continued so for several days; that on the next day defendants informed him that it might lead to his exposure if the deed was recorded, and offered to return the deed and note if he would give them $3,000 cash and his note for $2,000, secured by Lincoln County bonds: that plaintiff, believing himself liable on the note, and that defendants would falsely charge him with a felony and imprison him if he did not accede to their demands, paid thereon all the money he could raise, being $2,000, and delivered to them his three negotiable notes for $1,000 each, at two, four, and six months, together with eight Lincoln County bonds for $500 each, to secure the same, whereupon defendants returned to him the real-estate note and the deed. Plaintiff further states that defendants, by putting him in fear by false charges of felony and threats of criminal prosecution, arrest, and imprisonment, and whilst he was under duress and in the power of defendants, did extort from him the property aforesaid, worth $10,000; that by reason of the premises he suffered great pain of mind, and is damaged $25,000, for which he asks judgment.

The second count of the petition states that for twenty-five years prior to the grievances complained of, plaintiff was a merchant in St. Louis, enjoying a good reputation, and in 1871, and for years thereafter, was salesman and confidential clerk in the clothing house of Sahlein, Singer & Co.; that on October 1, 1877, defendants confederated together to ruin plaintiff in his good name and business, and to cheat him of $15,000; that in pursuance of this design

they inveigled him into the back office of Glover & Shepley, in St. Louis, and then and there, they and their paid attorney did falsely and without cause charge plaintiff with having stolen, from 1871 to October 12, 1877, from Sahlein, Singer & Co., $12,000 worth of goods, and did then and there demand that he pay over to Sahlein, Singer & Co. $10,000 to make good these losses ; and threatened that unless plaintiff would pay over this money they would prosecute and imprison him, and bring disgrace on him and his family. Plaintiff protested his innocence, whereupon defendants then and there falsely represented to him that they had witnesses then and there in that house to prove his guilt, and unless he then and there made settlement and paid over to them $10,000 they would prosecute him for larceny, imprison him, attach all his property, and expose and disgrace him. Plaintiff, being convinced that defendants had conspired to cheat him, and believing from their statements that they intended to do what they threatened, unless he complied, and believing that they could produce false witnesses to testify as they said, and being excited, crazed, and paralyzed in mind by the suddenness and enormity of the charge, delivered to defendants $5,000 in bonds of the Ozark Iron Company, worth their face, and executed and delivered to defendants his negotiable promissory note for $5,000 secured by real estate. Plaintiff states that he was overcome by this conspiracy, and wandered round St. Louis the whole of next night, in great mental excitement, and not knowing what he was doing ; that early next morning, whilst he was in the same state of mental disturbance, defendants, in pursuance of their conspiracy, suggested to plaintiff that to record the deed would lead to exposure, and would be dangerous for him, and that it would be better to make arrangements with Sahlein, Singer & Co. to prevent recording the deed, and proposed that plaintiff pay to Sahlein, Singer & Co. the further sum of $2,000 cash, and give his notes, at two, four, and six months, for $3,000,

secured by eight $500 Lincoln County bonds. Believing these threats, and believing that he was liable on said $5,000 note, and being prostrated in mind as aforesaid, plaintiff accompanied them to the law office of Myers, and then and there paid over the cash and executed and delivered the note proposed, and delivered the bonds, worth $4,000, as collateral. By these means he was damaged, and suffered anguish, and was defrauded of $12,000, and he asks damages in the sum of $25,000.

Defendants demurred, on the ground that the petition does not set forth facts sufficient to constitute a cause of action. The demurrer was sustained, and plaintiff declining to plead over, there was final judgment.

Involuntary payments, made under compulsions of legal process, or duress of goods or of the person, may be recovered back. In order to entitle the person paying to regain the amount by an action at law, the plaintiff must show, not only that the demand was illegal, but duress. By duress is meant that degree of severity, threatened, or impending, or actually inflicted, which is sufficient to overcome the mind and will of a person of ordinary firmness. *Ex vi termini*, a contract is the meeting or drawing together of minds. If the mind of one party to the contract is so far overcome that the freedom of the will is impaired, the contract may be voidable. If there is duress, the contract is voidable at law. The common law divides duress into duress of imprisonment and duress by threats.

As to the first, a man may execute a valid deed while in prison. But if he is unlawfully restrained of his liberty until he execute the instrument, and he executes it by force of the imprisonment, as the only means of setting him free, then the deed is voidable.

A careful examination of both counts of this petition shows that it contains no sufficient allegation of duress of imprisonment. It does not allege that plaintiff executed any instrument or made any agreement in order to get out

of Glover & Shepley's office. There is no allegation that continued imprisonment was threatened unless he settled with Sahlein & Co., or that such settlement was made a condition of his release. The allegations are, that he did what he did, not to get out of Glover & Shepley's office, but to prevent the preferring against him of criminal charges. Taking all the allegations of facts to be true, it is manifest that he remained in the room, the door of which was bolted and barred, simply because he chose not to turn the key and withdraw the bolt.

As to duress *per minas*, that is restricted to fear of loss of life, or of remediless injury to the person, or of imprisonment. Co. Lit. 253 b; 2 Inst. 483. But duress by threats of imprisonment must be such as to excite a reasonable fear of immediate imprisonment. We do not think that a threat of prosecution addressed to a man conscious of innocence is such a threat as would induce in any man of ordinary firmness an overwhelming fear of immediate imprisonment. Had the proper preliminary steps been taken, an affidavit been made before a magistrate or an information been filed, or had process issued, the case might be different. But we are not aware of any case in which threats of imprisonment have been held to constitute duress, where the threat was not accompanied at least with the statement that the prosecution had been begun, and that the parties had thus the means immediately at hand of procuring the instant arrest and imprisonment of the person threatened. *Harmon* v. *Harmon*, 61 Me. 227.

Nor is fear of imprisonment alleged distinctly in the petition. Fear of disgrace, and of prosecution, and of public exposure is alleged, but not fear of immediate imprisonment.

An attempt to collect a private claim by a resort to a criminal proceeding is undoubtedly specially odious, and the compounding of a felony is a crime against society; but it does not therefore follow that a threat of criminal proceedings constitutes duress *per minas*. An arrest by

legal warrant on a criminal charge to compel satisfaction of a debt may also be a misuse of process, and an illegal arrest, as respects the person knowingly perverting the machinery of the law to his private end ; but we do not see that that helps the matter at all. In the present case there was no arrest.

It is also true that circumstances of extreme necessity and distress, though not presenting a case of legal duress, may so overcome free agency, in some particular instance, as to justify a court of equity in setting aside a contract made under such circumstances, on account of the fraud practised upon one who has been morally chained down and deprived of the free exercise of his faculties of mind and will. But this is not a bill in chancery to set aside a contract for fraud, but it is an action at law for damages for an alleged wrong, as plainly appears, not from the prayer for relief alone, but from the whole scope of the petition. If it be granted that facts are stated which, if coupled with other allegations as to mental or moral infirmities of this particular plaintiff, or as to peculiar confidential relations between the parties, might, in a bill properly framed, furnish ground for some form of equitable relief, it will not follow that the court erred in sustaining this demurrer.

The petition is not good as an action for deceit, because, though it is alleged that some of the statements made were false, it does not appear that any particular false statements as to matters not equally within the means of knowledge of both parties were made, upon which plaintiff relied, and by which he was deceived to his loss.

The facts set out in the petition seem to make out a case of what is colloquially called " black-mail." But money paid under the influence of threats such as those set forth must, we think, unless in some special case, be regarded as a voluntary payment. Generally, it may be said that when a person knows that a claim made upon him is unjust, fraudulent, or illegal, the law requires him to resist it ; and

if he pays it voluntarily, he cannot recover back. *Williams* v. *Colby*, 44 Vt. 40.

The citizen owes to himself and society the duty not to buy silence when threatened with charges that may expose him to disgrace. If the accused knows himself to be guilty, the law will certainly not help him to recover back money paid to compound a felony ; if he is innocent, the law offers him her protection. And in every system of law the theory is, and must be, that that is enough ; that the guilty only will be punished through the machinery of a court of justice. And the law will not only protect the innocent, but also punish those who set on foot a malicious prosecution. Threats of a false prosecution for larceny or embezzlement are not regarded as calculated, in their nature, to overcome a mind of ordinary constancy. The *mens conscia sibi recti* is not frightened by groundless charges. If there are exceptions, no rules, legal or other, are founded on exceptions.

As to the precise character of the threats which would constitute duress of the person or of the goods, no rule can be laid down ; each case stands upon its own peculiar facts and circumstances. They must be threats of such bodily harm as will overcome the mind of a person of ordinary firmness. If the threat is of illegal imprisonment, there must be a reasonable ground of apprehension that the threat will be carried into immediate execution, and the threat must operate so as to overcome the will. If the imprisonment is to be by process, it must appear that process to that end has actually issued, or that there was a moral certainty that it would issue. A mere apprehension that legal proceedings will be set on foot by perjury or other improper means is not enough. Thus, where a person who was co-tenant with the plaintiff demanded of him a portion of the insurance money received by the plaintiff on a policy of insurance, to the whole of which plaintiff was entitled, and threatened, with violent language and curses, that un-

less plaintiff paid it to him then and there he would prose-
cute him on a charge that he had set fire to the property,
saying that he had seen three responsible men who saw
plaintiff set it on fire, and that he would have him in irons
and in jail before night, and plaintiff, fearing immediate ill-
consequences to his wife's health, paid the money, the
threats were held to be not of such a nature as to make the
payment involuntary. "A threat of prosecution," says the
the judge delivering the opinion of the court, " before the
commencement of any legal proceedings does not neces-
sarily include an arrest. It is no more than an assertion
that steps will be taken to institute a legal process, which
may or may not result in an arrest. And whether the
process is to be initiated before a magistrate or the grand
jury, the law so shields it by the oath of the complainant
and the witnesses, as well as the official oaths and responsi-
bilities of the magistrate and jurors, that the danger of
imprisonment from such a threat is too remote and contin-
gent to overcome the will of an innocent person of com-
mon firmness. *Harmon* v. *Harmon*, 61 Me. 231.

A paymaster's clerk embezzled money belonging to the
government, by altering vouchers and checks. Upon set-
tlement of the paymaster's accounts, a deficiency was found
in consequence of the embezzlement, and he was suspended
until he paid that balance into the treasury. He sought re-
lief under the Disbursing Officers' Act, after payment and
after his accounts were closed, on the ground that the pay-
ment was made under pressure of the suspension and his
liability to be court-martialed and dismissed. This he set
up as a " moral duress," a species of duress, as is remarked
by Chief Justice Drake in delivering the opinion of the
court, that is not known to the law. It was held by the
Court of Claims that his payment must be held to be vol-
untary and to conclude him. *Hall* v. *United States*, 9 Ct.
of Cl. 270.

A liquor dealer paid a license under an ordinance which

imposed a fine for selling without a license, which ordinance provided for imprisonment till the fine was paid, charged the officers of the town with the enforcement of the ordinance, and made an allowance to informers. The ordinance was afterwards declared to be void, and the liquor dealer sought to recover back the money paid for the license, on the ground that it was paid under duress and imminent danger of the ruin of his lawful business, or imprisonment, if it was not paid. It was held that the payment was voluntary, and that the mere apprehension of legal proceedings was insufficient. *Town* v. *Ackerman*, 46 Ind. 552.

"No one," say the court in *Town Council* v. *Burnett*, 34 Ala. 400, "can be heard to say that he had the right and the law with him, but he feared his adversary would carry him into court, and that he would be unlawfully imprisoned, and that, being deprived of his free will, he yielded to the wrong, and the courts must assist him to reclamation."

"Threat of legal process," say the court in *Preston* v. *Boston*, 12 Pick. 12, "is not such duress" as will authorize the party to recover back money voluntarily paid on an illegal claim; for the party may make proof and show that he is not liable.

"The legal principle is, that if a party, with full knowledge of all the facts of the case, voluntarily pays money in satisfaction of a demand unjustly made upon him, he cannot afterwards allege the payment to have been made by compulsion, and recover the money back, even though he should protest at the time of payment he was not legally bound. The reason of the rule and its propriety are quite obvious when applied to a case of payment upon a mere demand of money, unaccompanied with any power or authority to enforce such demand except by a suit at law. In such a case, if the party would resist an unjust demand he must do so at the threshold." *Boston, etc., Co.* v. *Boston*, 4 Metc. 181.

The law, in short, is perfectly well settled, to use the language of Lord Kenyon in *Fulham* v. *Down*, 6 Esp. 26 (note), that "when a voluntary payment is made of an illegal demand, without an immediate and urgent necessity, or to redeem your person or your goods, it is not the subject of an action for money had and received. The law, if so held, would subject all accounts and settlements between parties to revision."

" By submitting to the demand," says Gibbs, J., in *Brisbane* v. *Dacres*, 5 Taun. 143, "he that pays the money gives it to the person to whom he pays it, makes it his, and closes the transaction between them." In the course of the argument in the last case, Best, Serj., advanced the proposition that money shall not be recovered back if it be consistent with honor and conscience to retain it, but otherwise it shall. Gibbs, J., interrupted him, saying: " The principle has always been this : whenever the money has been paid in consequence of a demand as of right, then, although the demand was unfounded, the payment cannot be recovered back. There is a case of money paid under distress for standings in a market ; though the party had no right to distrain, the money could not be recovered back." p. 147.

And it has been repeatedly said that to avoid an act on the ground of menace of arrest and imprisonment, it must appear that the threat was of unlawful imprisonment, and the party put in fear of such imprisonment, and induced by such fear to do the act. *Alexander* v. *Pierce*, 10 N. H. 498 ; *Eddy* v. *Herrin*, 17 Me. 340 ; Story on Con. 400.

The doctrine of the cases is this : that whilst a contract made under compulsion is void for two reasons, (1) because, if there is compulsion there is no consent, and (2) because such a contract is founded in fraud and wrong, yet it is not all compulsion that has this effect. It must amount to duress. This duress must be actual violence, or threats. Duress by threats exists, not wherever a party has

entered into a contract under the influence of a threat, but only where such a threat excites a fear of some grievous wrong — as, of death or great irremediable bodily injury, or unlawful imprisonment — about to be then and there, or at least to be very shortly inflicted. The threat must be such as would naturally excite such a fear (grounded upon the reasonable belief that the person who threatens has at hand the means of carrying his threat into present execution) as would overcome the will of a person of ordinary courage. 1 Pars. on Con. 319, 320 ; 4 Wait's Act. & Def. 488 *et seq.* ; 1 Archb. N. P. 266.

"There are many cases on the subject," says Judge Wagner in *Wolff* v. *Marshall*, 52 Mo. 171, "and the conclusion clearly deducible from them is, that a payment of money upon an illegal and unjust demand, when the party is advised of all the facts, can only be considered involuntary when it is made to procure the release of the person or property from detention, or when the other party is armed with apparent authority to seize upon either, and the payment is made to prevent it. But where he can only be reached by a proceeding at law, he is bound to make his defence in the first instance, and he cannot postpone the litigation by paying the demand and afterwards suing to recover it back."

We think that the petition does not set forth facts to constitute a cause of action. The facts will neither support an action for damages for a wrong, nor an action of *assumpsit* for money had and received. The payment, giving due weight to the allegations, was not made under any duress which is recognized by the law ; it was, therefore, voluntary in a legal sense, and the transaction between the parties is closed.

The judgment is affirmed. All the judges concur.