LORING *et al.* v. THE CITY OF ST. LOUIS, *Appellant.*

**Taxes:** ILLEGAL COLLECTION: CONTRACT. The county collector of St. Louis county illegally collected interest on taxes, and delivered the same to the county under a contract with the latter to hold it in trust until his right to collect had been judicially determined; pending which a separation of the county and the city of St. Louis was had, and the county paid the fund to the city, to be held on the same trust. *Held*, that the city was liable therefor to the tax-payers, and that this was the case, notwithstanding there was a clause in the contract between the collector and the county, to the effect that the contract gave no tax-payer the right to sue the county for his share of said fund.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Leverett Bell* for appellant.

The respondents, by pleading the contract between Maguire and St. Louis county, and setting it up as the foundation of their right to recover herein, have in effect made themselves parties to it, and it is to be construed, for the purposes of this action, as if they had in effect executed

it and bound themselves by its terms and provisions, which preclude them from maintaining this action. No debt was created or exists by reason of the matter stated in the petition, on which plaintiffs are entitled to recover in this action against the defendant. The order made by the county on February 12th, 1877, awarding to plaintiffs the money sued for is invalid.

*Loring & Loring* for respondents.

It has been judicially determined by this court that the money in controversy was wrongfully exacted by Maguire from the tax-payers. *Maguire v. State Saving Asso'n*, 62 Mo. 344. The petition traces the money from the tax-payers through Maguire and the county of St. Louis to defendant, which now holds it in its treasury. The same liability rests upon the defendant as upon an individual to pay the money in dispute to plaintiffs. *Pimental v. San Francisco*, 21 Cal. 364; 16 Cal. 591; *Herzo v. San Francisco*, 33 Cal. 134. The contract between Maguire and the county does not preclude plaintiffs from bringing this suit; it was referred to in the petition to give a history of the case, and by so doing plaintiffs did not adopt it; they were not parties to it.

PHILIPS, C.—This action grew out of the following state of facts: In 1871 one Constantine Maguire was collector for the county of St. Louis. Under certain tax-bills against personal property, the collector wrongfully exacted of the owners of the property interest on the bills of assessment, and under compulsion collected thereon interest amounting to about $25,000. Of this fund thus wrongfully collected, the sum of $717.94 was taken from the parties represented in the pending suit.

On demand made by the county court of said county, that the fund so collected by the collector be paid over to the county, the State Savings Bank Association, one of the parties from whom a part of this fund had been exacted,

made claim on the collector for restitution, as for money had and received to its use. Thereupon Maguire filed his petition, bringing the county and Savings Association into court, to have the matter judicially determined as to whom he should pay over the money.

That cause was carried to the Supreme Court for final determination. During the pendency of that action, as its result could not be known, for the protection of the collector, and the better security of the county in the event it should be determined by the court that the money was rightfully collected, on the 26th day of May, 1873, the county court of said county and Maguire, entered into the following contract:

1. "Constantine Maguire will pay into the county court of St. Louis county, the sum found by said court's committee to have been collected by him as interest on delinquent personal tax-bills, viz., $25,159.34, less the amount of said interest involved in the suit of the State Savings Institution against him, now pending in the St. Louis circuit court, (and which amount is to be by him paid into said circuit court, to abide the decision on his interpleader in reference thereto against said association and said county court,) and also less the amount which said county court may allow said Maguire for expenses incurred in relation exclusively to the collection of said delinquent personal tax-bills, and which expenses are by law, or under any order of said county court lawfully chargeable to said county, or to be refunded to said Maguire by it. On the balance thus ascertained as to be paid by him, he shall also pay into said county court at the same time with the principal, interest thereon at the rate of six per centum per annum from the 22d of October, 1872, being the date of the service on him of the order of said county court, that he render an account of said interest collected on delinquent personal tax-bills. Said Maguire will, without delay, present to the county auditor all his claims for allowance or reimbursement of said expenses, and said county court will, without unneces-

sary delay, proceed to pass upon the same according to law, and only such amount as said court shall allow shall be deducted, as aforesaid, from said interest collected by said Maguire.    The balance thus ascertained shall be paid forthwith by him into said county court.   But notwithstanding said payment, said Maguire shall be free to appeal, or take his other remedy at law, from the decision of said county court, rejecting any of his said claims; nor shall this agreement refer to any claims he may have against the county of St. Louis, for any expenses of his office as collector, as aforesaid, other than those relating exclusively to said collection of interest on delinquent personal tax-bills.    The amount to be paid into said county court by said Maguire, as aforesaid, shall be held by said court as a special fund, to await the determination of the legal questions in relation to the rights to the same, and at the discretion of said court, may be deposited either in the county treasury or in some banking or savings institution of the city of St. Louis, either bearing interest or not, and on adequate security.

2.   Should any tax-payer, by suit in good faith and properly defended, or in any suit to which said county court of St. Louis is or shall be a party, recover from said Maguire any money paid him as interest on delinquent personal tax-bills, said county court shall repay to said Maguire, out of the fund paid by him, as aforesaid, a sum of money which shall bear to the total of said fund the same proportion that said interest originally collected by him, and the subject of such suit, may bear to the total of such interest collected by him, and ascertained by said county court's committee, as hereinbefore set forth; the remainder of such judgment, whether of original demand, principal or interest or cost, shall be paid by said Maguire without recourse on said county court, or of said county of St. Louis.

3.   Any payment by said county court out of said fund to any tax-payer, by virtue of any act of the general assembly of the State of Missouri, now in force or hereafter enacted, or in accordance with a decision of the Supreme

Court of Missouri, settling the question of right to interest on delinquent personal tax-bills, of such tax-payers' proportion of said fund, shall be a satisfaction *pro tanto* of all obligations and trusts assumed by said county court in regard to said fund. But nothing in this agreement contained shall be construed to give any tax-payer any right to sue said county court, or the county of St. Louis, for any part of said fund, or to obligate said court for said county, to defend any suit brought against said Maguire on account of any collection by him of interest on delinquent personal tax-bills, or to indemnify him against any judgment therein.

4. Nothing in this agreement shall be construed to hinder said county court, or the county of St. Louis, to refund to said Maguire, or to pay to tax-payers who may be entitled to return of interest collected on delinquent personal tax-bills, or to pay to the State of Missouri, or any corporation or body, or person whosoever in the aggregate, any greater amount than that to be paid as aforesaid, by said Maguire into said county court; but as soon as said fund, so paid in by him, shall have been exhausted by such payments or transfers to the revenue of the county of St. Louis of proper proportion of said fund, said county court and said county of St. Louis shall be wholly free from all further liability, trust or duty under this agreement; and should it hereafter appear that any other or greater amount than that heretofore mentioned, as ascertained by a committee of said county court, has been collected by said Maguire as interest on delinquent personal tax-bills, this agreement shall not be construed to apply to any such hereafter ascertained excess, but said county and said county court, and all other parties and persons whatever, shall have in relation thereto the same rights and remedies as if this agreement had never been made.

5. The proceedings now pending on notices by the county of St. Louis to said Maguire, of motions to be made at the next term of the St. Louis circuit court, shall be dismissed on his paying all costs and expenses thereof, as soon

30—80

as he shall have paid into said county court the funds here-inbefore mentioned, and he assents and engages to procure the assent of the sureties on his official bonds to the con-tinuance of said motions meanwhile."

The money was accordingly paid over to the county by Maguire. The suit of *Maguire v. The Savings Associa-tion*, was decided by the Supreme Court in favor of the association. 62 Mo. 344. After the adoption of "The Scheme and Charter," which took effect October 21st, 1876, the city of St. Louis thereby assumed the existing county indebtedness; and on July 31st, 1877, adopted the follow-ing ordinance:

"Section 1. The mayor is hereby authorized and directed to confer with the county court of St. Louis, as now organized under the scheme, and to enter into an agree-ment on behalf of the city with said county authorities for the division between the said city and county, of the bal-ance of all funds and assets in the hands of Herman Rech-tien, late county treasurer, which, under section 13 of the scheme, he is required to pay into the city treasury and county treasury respectively, which agreement shall be binding on the city of St. Louis.

Section 2. For the purpose of facilitating a settle-ment of the balance due to the city, and hastening the pay-ment thereof into the city treasury an emergency exists; therefore this ordinance shall take effect and be in force from and after its passage."

The county had kept said fund deposited as "The Con-stantine Maguire fund" in the county treasury. And on the 12th day of February, 1877, the county court made an order that there be paid to plaintiffs, for the tax-payers aforesaid named in this action, sixty per cent of their claim, amounting to the sum of $430.50, which sum plaintiffs de-manded of the county treasurer, but was refused payment. After the adoption of the ordinance aforesaid, by the city, the funds in the county treasury were divided between the county and the city, by which "the Constantine Maguire

fund," amounting to $6,621.68, was paid over to the city of St. Louis, and is now so held by it. Maguire became insolvent, and the plaintiffs demanded of the city the said sum of $430.50, which being refused, this action was brought to recover the same.

The petition substantially sets up the preceding facts, and seeks judgment against the city for the said sum of $430.50, with interest, etc. To this petition the defendant demurred. The circuit court sustained the demurrer, and the plaintiffs appealed to the court of appeals, where the judgment of the circuit court was reversed. From this decision of the court of appeals, the defendant has appealed to this court.

I. We consider the opinion of the court of appeals in this case, as quite decisive of all the questions raised on this appeal. It is only out of respect for the earnestness with which the appellant re-argues the points made against the sufficiency of the petition, that we reproduce the argument of the court of appeals, with such additional suggestions as occur to us to be equally decisive of the merits of the case.

The first ground assigned against the validity of the petition, is the following provision occurring in the agreement between the county and Maguire : "But nothing in this agreement contained, shall be construed to give any tax-payer any right to sue said county court, or the county of St. Louis, for any part of said fund, or to obligate said court of said county to defend any suit brought against said Maguire, on account of any collection by him of interest on delinquent personal tax-bills, or to indemnify him against any judgment therein."

The argument made by appellant's counsel is, that the plaintiffs, by pleading the contract, have, in effect, made themselves parties to it, and adopt its conditions; and, therefore, they cannot maintain this action.

There is plausibility in this, but it is not tenable in this action. The contract was a part of the history of the case,

one of the facts in the statement of the cause of action, to show that the county court obtained the fund from the wrong-doer with full knowledge of the circumstances under which Maguire took it. If, as a matter of equity, the fund was affected with a trust for the benefit of the wronged tax-payers, it was not in the power of the trespasser and his privy by compact, solely between themselves, to preclude the rightful owner from following it into the hands of the voluntary transferee. If the law were otherwise, how easy it would be for such volunteer to avail himself of goods tortiously taken, by stipulating with the tort-feasor that the party despoiled should have no right to reclaim his property from the mere depositary.

In the case of *Maguire v. State Savings Asso'n, supra,* this court decided that the money exacted by Maguire was tortiously taken, and the act was moral duress at least. As such, it was a fraud in law. A court of equity will create a constructive trust in such cases. 1 Perry on Trusts, §§ 166, 169, 170; Story Eq. Jurisp., § 187. "The leading principle of this remedial justice is by way of equitable construction to convert the fraudulent holder of property into a trustee, and to preserve the property itself as a fund for the purpose of recompense." The difficulty in this case of pursuing the particular fund, on account of the usual inability to identify money, is obviated by the allegation of the petition that it has been preserved by the trustee as "the Constantine Maguire fund." The defendant has it in kind.

True it is, that the county could not have been made responsible to the tax-payers for the act of the collector as its agent, without more. It would also be inaccurate to say the county could be held answerable as in the case of a ratification by the principal of the unauthorized act of the agent. For the doctrine of the maxim, *omnis ratihabitio retrotrahitur,* etc., does not apply to the instance where the principal would not himself have had the lawful right to do the act which he ratifies. Story on Agency, (8 Ed.) note 2, p. 299; *McCracken v. City of San Francisco,* 16 Cal.

592. But when the county took from the collector the money, it created a privity between them, and held the fund charged with the same trust which affected it in the hands of Maguire. It was on this principle, in effect, that the supreme court of California, in the case of *Pimental v. City of San Francisco*, 21 Cal. 365, and *Herzo v. City of San Francisco*, 33 Cal. 134, held the city bound. The officers of the city, without due warrant, undertook to sell certain real estate of the city, and received large sums of money therefor. The sales were held void for lack of power in the officers to sell in the manner attempted. On suits by the purchasers against the city to recover back this money, it was held that the acts of the officers were only those of assumed agents, and as such, it was not binding on the city. And even had the agents paid the money over to the city treasurer, who, without direction from the municipal government, covered the same into the city treasury, that would not have sufficed to render the city liable. "As she was not responsible for its being in the treasury, she would not be accountable for it to the purchaser, until she had exercised dominion over it, treating it as her own." The city was held bound, because she had received the money as such city, and assumed to control it. C. J. Field said: "We do not appreciate the morality which denies, in such cases, any rights to the individual whose money or other property has been thus appropriated. The city cannot appropriate to her own use the property of others, and screen herself from responsibility upon the pretence of excessive indebtedness. The city has obtained it and used it, and she is legally, as she is morally, bound to refund to him (the plaintiff)."

In the case at bar the money was covered into the county treasury by the express agreement, and at the instance of the county court, and into the city treasury pursuant to an express ordinance of the city government, and under claim of devolution of right by operation of the " Scheme and Charter." To this money it has no right.

It got it without consideration to the rightful owner, and with full knowledge of its wrongful exaction.

We do not deem it important to discuss the other points suggested by counsel, touching imputed defects and irregularities in the proceedings essentially necessary in ordinary cases, to fix a liability on the treasurer of the county to pay a claim against the county. The failure of the county officials to do the appropriate act to warrant the treasurer to pay over this fund on demand, made of him, could in no manner affect the right of the wronged tax-payer to sue the city for his money. The city holds it as trustee for the owner. The act of the city in demanding this fund of the county, on the ground that it was a debt of the county, passing to the city by virtue of the provision of the " Scheme and Charter," and then, after so receiving it, declining to pay it to the creditor, for the reason that it was not a debt of the county, is as inconsistent as it is indefensible.

The judgment of the court of appeals, reversing the judgment of the circuit court and remanding the cause, is affirmed. All concur.