F. W. NIEDERMEYER, Appellant, v. THE CURATORS OF THE UNIVERSITY OF MISSOURI, Respondents.

Kansas City Court of Appeals, April 1, 1895.

**Contract**: ACCEPTANCE: NOTICE: ENTIRETY: OPTION: PAYMENT RECOVERED. The catalogue of the University for 1892–93 contained the statement that applicants for admission to the classes of the law department were required to pay $50 for first year and $40 for each successive year. Plaintiff in 1892 paid $50 and was admitted to the junior class. The catalogue for 1893–94 stated that all law students were required to pay $50 per year. Plaintiff in 1893 tendered $40 for admission to the senior class which was rejected and paid the $50 demanded, under protest. *Held*,

(1) Plaintiff's payment of $50 constituted an implied acceptance and notice thereof, and the contractual relations thereby created became complete and binding.

(2) And the acceptance by plaintiff of defendants offer constituted an entire contract.

(3) If it was an option, it was still binding, as plaintiff not only paid and demanded the right to enter under the option, but, paid a valuable consideration for the option, which could not be withdrawn.

(4) The plaintiff could recover the excess over the $40 he had been compelled to pay under, as it were, moral duress. Authorities *pro* and *con* reviewed.

*Appeal from the Boone Circuit Court.*—HON. JNO. A. HOCKADAY, Judge.

REVERSED AND REMANDED (*with directions*).

*J. H. Murry* and *C. B. Sebastian* for appellant.

(1) The first question in this case is, does the provisions of the catalogue when accepted, as this was, constitute an entire contract? To determine this, requires a construction of the contract, and in doing this the court should not only consider the language employed, and the subject-matter, but view them in the light of the circumstances to ascertain what the parties actually understood, or intended. 2 Parsons on Contracts [7 Ed], p. 517. (2) The fact that the contract is not signed by appellant does not relieve the respondent of the moral and legal responsibility on its part to carry it out in good faith. *Cheney v. Cook,* 7 Wis. 413; *Vilas v. Dickenson,* 13 Wis. 488. (3) If it should be contended that it is a contract for the first year with an option to take the second year, by paying $40, then it is binding on respondent. When appellant entered the first year and paid $50, he not only paid for his tuition for that year, but paid for his option to take the next year for $40. Bishop on Contracts [Ed. 1887], sec. 325; Tiedeman on Sales, sec. 41; *Cheney v. Cook, supra.* (4) The amount sued for having been paid under duress, the appellant is entitled to recover it back. *Westlake v. St. Louis,* 77 Mo. 45.

*Turner, Hinton & Turner* for respondent.

(1) The court committed no error in giving the peremptory declaration of law that the verdict should be for the defendant. *Matlock v. Meyers,* 64 Mo. 531. (2) The plaintiff failed to prove any cause of action whatever. *First.* In the very nature of things, these annual catalogues were only intended to apply to the ensuing year, and to give notice of the rates of tuition in force at that time. *Second.* Even if the catalogue

announcement of tuition fees should be construed as plaintiff contends, that is, as making an offer of rates beyond the ensuing school year, it would constitute a mere offer or proposition to make a contract covering more than one year, and until accepted in its entirety it could have no binding force or effect. *Caugas v. Mfg. Co.*, 37 Mo. App. 297. (3) There is no question of duress in this case.

SMITH, P. J.—The catalogue of the University of the state for the years 1891 and 1892 containing the following paragraph, amongst others:

"TUITION CHARGES AND EXPENSES.—Applicants for admission to any of the classes of the law department, or as special students of elective courses, are required to pay the sum of fifty dollars for the first year's attendance and forty dollars for each successive year.

"[Signed]            ALEXANDER MARTIN,

"Dean, Columbia, Mo."

It appears that the plaintiff examined the said catalogue, including the above quoted paragraph, after which he concluded to enter the University with the view of availing himself of the entire course of legal study there specified. Accordingly, in October, 1892, he paid the treasurer of the University the sum of $50 and was admitted to the junior class of the law department for the year ending June, 1893.

In September, 1893, the plaintiff, desiring admission to the senior class of said law department for the session ending June, 1894, offered to pay said treasurer $40 tuition for that year, which offer was rejected, and finding that the sole condition of admission was the prepayment of a tuition fee of $50, he paid that amount under protest, and was thereupon given a matriculation card. In the catalogue of 1893 and 1894 is a paragraph to the effect that law students are

required to pay $50 tuition per year. On substantially the foregoing state of facts, the plaintiff brought this suit before a justice of the peace to recover $10 for "excessive tuition collected for law department, 1893 and 1894." There was a trial in the court below, where the cause was removed by appeal, which resulted in judgment for the defendant, from which plaintiff has appealed.

The paragraph in the catalogue of 1892 and 1893 was by its very terms, a public offer to admit persons as students to any of the classes of the law department of the University, on payment of the sum of $50 for the first year and $40 for each successive year. The plaintiff's payment of $50 and receipt of his matriculation card for the years 1892 and 1893, constituted an implied acceptance and also notice of such acceptance. The contractual relations created between the parties thus became complete and binding. *Society v. Broomfield*, 102 Ind. 146; Bishop on Contracts, sec. 322; Wharton on Contracts, sec. 241; *Lovejoy v. Railroad*, 53 Mo.App. 386.

Did the acceptance by plaintiff of the defendant's offer constitute an entire contract? To determine this, requires a construction of the contract, and in doing so we must not only consider the language employed and the subject-matter, but view them in the light of the circumstances, to ascertain what the parties actually understood or intended. 2 Parsons on Contracts [7 Ed.], 517. It is manifest that the purpose of the defendants was to secure the attendance of students who would complete the entire course by offering them as an inducement a reduction of the tuition for the successive years which would be required to complete the entire course. The undisputed evidence shows that the plaintiff entered for the purpose of taking, and did take, the entire course. In view of the language of the

offer and the facts just stated, we think that the contract between the parties was an entirety.

If, as suggested by the plaintiff, it should be contended the offer and acceptance is a contract for the first year, with an option to take the second year by paying $40, then it is binding on defendants, as the plaintiff not only appeared and demanded the right to enter under the option, before the term expired, but paid a valuable, consideration for the option, which could not be withdrawn. Bishop on Contracts [Ed. 1887], section 325; Tiedeman on Sales, section 41; *Cherry v. Cook,* 7 Wis. 413.

But, suppose it be conceded that under the contract existing between plaintiff and defendants, the former was entitled to admission to the senior class of law department, for the term ending in June, 1894, on payment of a tuition fee of $40; and suppose, too, it be further conceded that the defendants, by their treasurer, demanded of the plaintiff the payment of the tuition of $50 for said year, as a condition precedent to his admission, and that plaintiff paid the excess above $40 under protest, yet can he recover back such excess in an action of *assumpsit* for money had and received?

In *Brisbane v. Dacres,* 5 Taunton, 143, it was declared by GIBBS, J: "When a man demands money of another, as a matter of right, and that other, with full knowledge of the facts upon which the demand is founded has paid a sum, he never can recover back the sum so voluntarily paid." * * * "I think that, by submitting to the demand, he that pays the money gives it to the person to whom he pays it and makes it his and closes the transaction between them. * * * It would be most mischievous and unjust if he who has acquiesced in the right by voluntary payment should be at liberty at any time within the statute of limita-

tions to rip up the matter and recover back the money." In *Buchanan v. Sahlein,* 9 Mo. App. 563, Lord Kenyon is quoted as saying in *Fulham v. Down,* 6 Esp. 26 (a case which we have been unable to find), that, "when a voluntary payment is made of an illegal demand, without an immediate and urgent necessity, or to redeem your person or your goods, it is not the subject of an action for money had and received. The law if so held, would subject all accounts and settlements between parties to revision." In *Boston v. Boston,* 4 Metc. 181, it is stated that the legal principle is, that if a party, with full knowledge of all the facts of the case, voluntarily pays money in satisfaction of a demand unjustly made upon him, he can not afterwards allege the payment to have been made by compulsion and recover it back, even though he should protest, at the time of the payment, that he was not legally bound.

In *Buchanan v. Sahlein, supra,* it is stated that the doctrine of the adjudged cases is that whilst a contract made under compulsion is void for two reasons, *first,* because, if there is compulsion, there is no consent, and, *second,* because such contract is founded in fraud and wrong; yet, it is not all compulsion that has this effect. It must amount to duress. Duress must be actual violence or threats. Duress by threats exists, not whenever a party has entered into a contract under the influence of a threat, but only when such a threat excites a fear of some grievous wrong, as of death, or great irremediable bodily injury, or unlawful imprisonment, about to be, then and there, or, at least, to be shortly, inflicted. In *Wolff v. Marshall,* 52 Mo. 171, it is, in effect, said that the conclusion deducible from the many cases on the subject is, that a payment of money upon an illegal and unjust demand, when the party is advised of all the facts, can only be considered involuntary when it is made to procure the release of the person or

property from detention, or when the other party is armed with apparent authority to seize upon either, and payment is made to prevent it. *Maguire v. Savings Ass'n*, 62 Mo. 344, was where the collector demanded interest on a personal tax—an illegal demand —and this demand was coupled with another demand for the personal property tax itself, which was in all respects legal. The Savings Association objected to the payment of the excess, vainly applied to the county court for an abatement of the interest, and then paid the whole sum, and it was held, in an action for money had and received, the excess could be recovered because the money was unwillingly and compulsorily paid; paid to one seemingly clothed with power to seize and sell goods, etc., for the payment of the illegal demand, and paid under fear that such unjust demand would be enforced.

*Westlake v. St. Louis,* 77 Mo. 47, was where the defendant city demanded an illegal and excessive water rate, to which plaintiff objected on that ground. The collector of the water rate refused to make any reduction and threatened to turn off the water from plaintiff's foundry, if payment was not made. The payment was made to prevent the threat from being carried into execution. In the course of the opinion it was said: "It is easy to see that in such circumstances the payments were not made voluntarily. They were made under what has aptly been termed moral duress; the parties paying the excessive amount and those receiving it were not on equal terms. The city officials possessed the power, and they threatened to exercise it, of cutting off the water supply of plaintiff, unless the illegal demands already mentioned met with immediate compliance. If the conditional threat had been carried into execution, the foundry of the applicants for license would have been forthwith closed. * * * The

payment of the excess was therefore as much under compulsion as if the city officials had been armed with a warrant for the arrest of the persons, or the seizure of the goods, etc.'' And to the same effect are *Warrensburg v. Miller*, 77 Mo. 56; *Loring v. St. Louis*, 80 Mo. 461.

Although in the present case the payment of the excess was not made to preserve the inviolability of the person, or to redeem property illegally held, or to prevent its unlawful seizure, yet it was made to secure admission. It was paid to remove what was otherwise an insurmountable barrier to the completion of plaintiff's legal education in the University of his state; to avoid being compelled to go abroad to seek University advantages, amply provided by his own state for all its citizens; to enable plaintiff to gain admission to the senior class of the law department and thus speedily obtain his degree; and to prevent an interference and break in the course of his legal education, and the loss of money expended in reaching the University and providing text-books, etc. The plaintiff and defendants were not on equal terms. The defendants possessed, and in effect threatened to exercise, the power of excluding the plaintiff unless the illegal demand of their treasurer met with compliance.

Under these circumstances, can it be said the payment was voluntary? Was it not under moral duress? Was not the plaintiff under as much compulsion as if the defendants had been armed with a warrant for the arrest of plaintiff or the seizure of his goods? If the fear of the seizure of goods, as in 62 Mo., *supra*, would make the payment of the extorsive excess, if made under objection, compulsive and involuntary, it would seem that a payment made to prevent the incalculable injury already indicated must be regarded in the same light. According to some of the authorities within

and without this state, from which we have quoted, the plaintiff's action can not be maintained; but according to the most recent rulings of the supreme court just referred to, it would appear that it can.

After the proposition contained in the catalogue of 1892 and 1893 had been accepted by plaintiff, and the rights of the plaintiff had thereby become fixed, it was not within the power of the defendants to alter or abridge those rights by withdrawing the proposition and publishing that contained in the catalogue of 1893 and 1894. And whether plaintiff had notice of that fact before he applied for admission to the second year's course or not, it seems to us, can make no difference. The proposition contained in the catalogue of 1892 and 1893 was that of the state, and, when accepted, good faith and fair dealing required it should be carried out on the part of the state to the letter. An enlightened and progressive state can ill afford to trifle with the rights of the citizen in the slightest degree. The court erred in rejecting the theory contained in the plaintiff's instruction and in adopting that contained in those of the defendants.

The judgment must be reversed and cause remanded, with directions to the circuit court to enter judgment for the plaintiff. All concur.