No. 7754.

HUTCHINSON *v.* LEWIS.

SLANDER.—*Pleading.—Averments.*—Where the complaint in an action for slander averred that the defendant spoke "of and concerning the plaintiff" the following false and defamatory words: "I saw Lee Jones (meaning plaintiff)," etc., it is not necessary to further aver that the plaintiff was known by such name.

SAME.—*Complaint. — Demurrer.—Practice.*—Where, in such action, the complaint charges two sets of slanderous words, if either is sufficient, a demurrer to the complaint for want of facts should be overruled.

SAME.—*Actionable Words.*—Words charging the plaintiff with being a whore are actionable *per se.*

SAME.—*Statement of Witness Privileged.—Presumption of Privilege, How Overcome.*—All statements of a witness, as a general rule, are absolutely privileged; and those that are not are presumptively so, and before a witness can be held liable for statements made in a judicial proceeding, this presumption must be overcome by showing affirmatively that such statements were false and malicious.

SAME. — *When Statement of Witness Privileged. — Evidence. — Malice.* — Where, in an action for slander, it is shown that the defendant was subpœnaed as a witness in a cause, testified upon the trial, and as a witness made the statement complained of, and it is not shown that the statement was impertinent and immaterial, or that it was not responsive, or that he wandered from the case to gratuitously make the statement, or that it was not relevant or not made in the faithful discharge of his duty as a witness, under these circumstances such statement is absolutely privileged; but, if it were not, it would be presumed to be, and, before a recovery could be had, malice in making the statement must be shown.

SAME.—*Privileged Statements of Witness Can not be Used Against him.*—A statement made by the defendant after he had testified as a witness in a case, not actionable standing alone, and not proving any set of words declared upon in such action, can not be aided by a statement made by him as a witness which is privileged, so as to make such former statement slanderous.

PRACTICE.— *Verdict.*—*Evidence.*—*Failure of Proof.*—*Supreme Court.*—The rule, that the Supreme Court will not disturb a verdict when there is any evidence tending to support it, has no application to a case where there is an entire failure of proof.

From the Montgomery Circuit Court.

*J. Wright, J. M. Seller, R. B. F. Peirce, G. W. Paul* and *J. E. Humphries,* for appellant.

*J. R. Courtney,* for appellee.

BEST, C.—This was an action of slander, brought by the appellee against the appellant. The complaint originally consisted of four paragraphs, but after the issues were formed the third and fourth were withdrawn.

It was averred in the first that the defendant spoke of and concerning the plaintiff, in the presence of Samuel G. Irwin and others, the following false and defamatory words : "I saw Lee Jones (meaning plaintiff) out in the woods, last fall a year ago, with Oscar Davis. She (meaning plaintiff) had her clothes up around her waist, and he (meaning said Davis) was so close to her (meaning plaintiff) that I could not see between them."

In the second paragraph it is averred that the defendant, in the presence of John Canine and others, spoke of and concerning the plaintiff, in addition to the language set out in the first paragraph, the following false and slanderous words : "She (meaning plaintiff) is a woods whore, and I can prove it by John Wilkison."

A demurrer for want of facts was overruled to each paragraph of the complaint, and an exception reserved. An answer in denial, with some special pleas that need not be further noticed, was filed.

Hutchinson *v.* Lewis.

Trial by jury ; verdict for $300 ; motion for a new trial for the reason, among others, that the verdict was not sustained by sufficient evidence ; overruled and an exception ; final judgment. From this judgment the appellant appeals, and assigns as error the order of the court in overruling the demurrer to each paragraph of the complaint, and in overruling the motion for a new trial. The objection urged to the first paragraph of the complaint is, that there is no averment that the appellee was known by the name of "Lee Jones." There is nothing in this objection. Section 86 of the code provides that, "In an action for libel or slander, it shall be sufficient to state generally that the defamatory matter was published or spoken of the plaintiff," and the averment is that the language was spoken "of and concerning the plaintiff." This was sufficient. The demurrer was properly overruled.

The only objection urged to the second paragraph is, that there is no averment that Oscar Davis was not the husband of the plaintiff at the time the offence therein charged is imputed to her. However much force there may be in this objection, as applied to the language imputing an offence to the appellee with Davis, it can have none whatever when applied to the other charge contained in this paragraph. The demurrer was not limited to a single set of words, but was general, and, therefore, if either set was sufficient, it was properly overruled. The second set was actionable *per se*, and it was immaterial whether the appellee was a married or an unmarried woman. The demurrer to the second paragraph was also properly overruled.

The appellant insists that the court erred in overruling the motion for a new trial, because the evidence was not sufficient to sustain it, and we concur with him in this conclusion. The evidence for the appellee, to prove the speaking of the words, is very brief, and is as follows :

James Hutchinson, the defendant, testified : "My name is James Hutchinson, and I am the defendant in this cause

now on trial; I did not tell Wright and Seller anything about the plaintiff in this suit; I was subpœnaed as a witness on the trial of the case of ' this plaintiff against Samuel G. Irwin and Mary J. Irwin, in this court, and on the morning of the day of the trial I was in the law office of Wright and Seller, and they asked me what my evidence would be, and I refused to tell them; I was a witness and testified on the trial of the cause just mentioned, between this plaintiff and the Irwins, for slander; on the trial of that cause I testified that"—and then follows almost literally the language imputed to him in the first paragraph of the complaint, which it is unnecessary to repeat.

On cross-examination, he said: "After the Irwins were sued by this plaintiff, one of them, Dr. Samuel G. Irwin, came to me and wanted to know what I knew about her; I refused to tell him anything about what I had seen or what I knew, and I never did tell Dr. Irwin, or any one else, what I had seen until I testified as a witness in that case in court; I live in this county, and was regularly served by subpœna to be present as a witness on the trial of that cause, on behalf of defendants; my testimony on that trial was true; I saw the plaintiff and Oscar Davis just as I described in my testimony."

John Canine testified: "My name is John Canine, and I live in this city; I know the parties to this suit; during the progress of the trial of the case of this plaintiff against the Irwins I was here, and one day was standing down on the front steps of the court-house, after Hutchinson had testified, and I asked him if he was certain that she is the woman you saw out in the woods, and he said, 'Yes; I am certain.' "

On cross-examination, he said the conversation was a casual one of his own seeking, and the reason he made the inquiry was, that he had been waiting upon the plaintiff.

Samuel G. Irwin testified that the plaintiff had sued him and his wife for slander; that it was a different thing from the act testified to by the defendant; that he learned from

others that the defendant would make a good witness for him, and that he went to see him about it; but he refused to tell him anything about what he had seen or knew; that he became satisfied, from his manner and from some remarks, that he knew something about it, and he said : "I had him regularly served with a subpœna as a witness for myself and my wife in that suit. He was sworn and testified as a witness ; I heard his evidence on that trial ; he said"—and then follows the language set out in the first paragraph of the complaint.

On cross-examination, he said : "At the time I first went to Hutchinson to see what he knew, my case was pending in this court, and I was hunting up evidence for the trial ; I had two or three talks with Hutchinson, and tried very hard to get him to tell me what he knew, but he refused absolutely to tell me anything about it, and I determined to take the risk of using him any way ; I had him regularly subpœnaed and required his attendance as a witness ; I heard his statement for the first time when he testified as a sworn witness upon the stand."

The appellee testified that in September, 1876, she was at her home, about twenty miles distant from the woods where appellant testified that he had seen her and Davis. This was all the evidence given in chief, and all tending to support the charge. Was it sufficient? We think not. It will be observed that there was none at all to prove the speaking of the second set of words set out in the second paragraph of the complaint. The testimony of the appellant and of Samuel G. Irwin, the only witnesses who testified as to the speaking of the words, show that they were spoken as a witness, upon the trial of a cause, brought by appellee against Irwin and wife for slander, and appellant claims that this communication is absolutely privileged. The rule on this question is thus stated in Townshend on Libel and Slander, section 223 : "The due administration of justice requires that a witness should speak, according to his belief, the

truth, the whole truth, and nothing but the truth, without regard to the consequences ; and he should be encouraged to do this by the consciousness that, except for any wilfully false statement, which is perjury, no matter that his testimony may in fact be untrue, or that loss to another ensues by reason of his testimony, no action for slander can be maintained against him.'' This is a correct statement of the law upon this subject. 1 Hilliard Torts, p. 322 ; Cooley Torts, p. 210 ; *Calkins* v. *Summer*, 13 Wis. 193 ; *Nelson* v. *Robe*, 6 Blackf. 204 ; *Grove* v. *Brandenburg*, 7 Blackf. 234. The rule, however, assumes that the witness will not abuse his privilege by making statements which are impertinent and immaterial, and which are not in fact, nor does he believe them to be, responsive to questions propounded to him. All statements of a witness, as a general rule, are absolutely privileged. Those that are not are presumptively so, and, therefore, before a witness can be held liable for the latter this presumption must be overcome by showing affirmatively that such statements were false and malicious. When this is done, the protection of the law is withdrawn, and he is liable precisely as though such statements were not made in a judicial proceeding. As all the statements of a witness, as a general rule, are absolutely privileged, all are presumed to be so, and, therefore, where nothing is shown, except that the statement was made as a witness in a judicial proceeding, such statement must be regarded as absolutely privileged. Before it can be otherwise treated, it must affirmatively appear that it is not within the general rule.

Applying these principles to the statement in question, it is obvious that the appellant incurred no civil liability in making it. It is shown that he was subpoenaed as a witness in an action for slander ; that, in obedience to the process of the court, he attended and testified as a witness upon the trial, and as a witness made the statement. This is all. It is not shown that his statement was impertinent and imma-

terial, or that it was not responsive, or that he wandered from the case to gratuitously make the statement. In short, nothing appears to indicate that the statement was not relevant, that it was not responsive, and that it was not made in the faithful discharge of his duty as a witness. Under these circumstances, the statement falls within the general rule, and is absolutely privileged. Again, if it were not, it would be presumed to be, and before a recovery could be had malice must be shown. Cooley Torts, 211.

There was no evidence whatever of any malice in making the statement, and without it there could be no recovery, even if the statement should not be regarded as absolutely privileged.

The appellee concedes that this statement is within the rule exempting the appellant from liability, but insists that the rule is an unwise one, not founded in reason, and ought to be disregarded. We think otherwise, and, although requested, do not feel like reviewing the authorities that sustain it, nor stating the reasons that support it.

The appellee also insists that the statement made to John Canine is sufficient to support the verdict. We do not think so. The inquiry made by Canine of appellant was: "Are you certain that she is the woman you saw out in the woods?" His answer was: "I am certain." Assuming that the inquiry was about the appellee, the answer was not slanderous. Standing alone, it was not actionable, nor did it prove any set of words declared upon. It could not be aided by the statement of appellant, made as a witness. Such statement, as we have shown, was privileged, and created no liability—none as a substantive cause of action—nor could it be used or considered for any purpose whatever. Without this statement, the answer to Canine proved nothing, and, as there was no other evidence tending to prove the speaking of the words, the evidence was insufficient to support the verdict. We are not unmindful of the rule, that

this court will not disturb a verdict when there is any evidence tending to support it, but this rule does not apply to a case where there is an entire failure of proof. 2 G. & H., p. 116, sec. 96 ; *The Jeffersonville, etc., R. R. Co.* v. *Worland*, 50 Ind. 339.

For these reasons, we think, the judgment should be reversed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment be, and it is hereby, in all things reversed, at the costs of the appellee, with instructions to grant a new trial.