Filed Dec. 13, 1893.

---

No. 797.

## BALDWIN v. HUTCHISON.

HARMLESS ERROR.—*Overruling Demurrer to Paragraph of Complaint.*— ·Any error in overruling a demurrer to a paragraph of complaint will be deemed harmless, where it clearly appears that the judgment is founded upon another paragraph of the complaint.

PLEADING.—*Complaint, Sufficiency of.—To Recover Money Obtained by Duress.—Threatened Prosecution for Statements as Witness.—Privileged Communication.*—In an action to recover money obtained through duress and without consideration, the complaint was sufficient which alleged, in substance, that plaintiff, having been duly subpœnaed, testified as a witness in the trial of a cause to which de-

Baldwin *v.* Hutchison.

fendant was a party, and, in response to questions asked him, testified that the character of defendant's son, a witness, was bad for truth and veracity, and that plaintiff testified on cross-examination that he had heard one A. and wife say that said son had stolen a sheep, all of which answers were made in good faith, and without malice, believing them to be true; that the defendant, the next day, threatened to prosecute plaintiff for such testimony, unless plaintiff paid him a certain sum of money; that plaintiff was a person of weak mind, of little education and experience in business affairs, ignorant of the law and of his rights and liabilities as a witness, easily influenced and overcome by a person of strong mind, all of which was known to defendant, and that defendant was a shrewd business man of wide experience, and of force and determination; that plaintiff, believing that defendant would carry out his threats, and by being put in fear of defendant, and against plaintiff's will, and upon defendant's promise not to prosecute him on account of said testimony, plaintiff paid defendant the sum of $900, which he seeks to recover.

DEMAND.— *Money Wrongfully Obtained.*— Where money has been wrongfully obtained by means of a voidable contract, for which there was received no valuable consideration, a demand before suit is not necessary.

From the Montgomery Circuit Court.

*G. W. Paul* and *M. W. Bruner,* for appellant.

*B. Crane* and *A. B. Anderson,* for appellee.

GAVIN, J.—The appellee's complaint was in two paragraphs, each of which was attacked by demurrer. The special verdict of the jury clearly shows that the judgment is founded upon the second paragraph of complaint. It is therefore unnecessary for us to consider the sufficiency of the first paragraph, since, if the second is good, any error in overruling a demurrer to the first will be deemed harmless. Elliott's App. Proced., section 637; *Doan* v. *Dow,* 8 Ind. App. 324.

By the second paragraph of complaint the following state of facts is shown:

Appellee was regularly subpoenaed and testified as a witness in the trial of a cause to which appellant was a party. In response to the questions asked him, appellee

stated that the character of appellant's witness, his son, was bad for truth and veracity. In response to questions asked by appellant's counsel, he also testified, on cross-examination, that he had heard that he had stolen a sheep, and that he had heard one Elstun Sayers and his wife say so. All of these answers were made in good faith, without any malice, and in the belief that they were true. Appellee had, in fact, heard it said that said Baldwin had stolen a sheep, and it was his recollection that he had heard it from Sayers and wife. On the next day, after dark, appellant came to appellee's house in a buggy and waited outside while one McComas came into the house and told appellee that the Baldwins were very mad over his testimony, and had been to see the Sayers, who denied having made the statement, and that appellant would send appellee to the penitentiary, and put him behind the bars, and cause him to lose his farm unless he fixed the matter up satisfactorily; that it would take from $3,000 to $5,000 to fix it up. McComas advised appellee to go out and talk to appellant, and fix it up. Appellee went out and talked with appellant, who told him if he didn't fix the matter up and pay him a large sum of money, appellant would send him to the penitentiary, put him behind the bars, and cause him to lose his farm, and informed appellee that he could have nutil seven o'clock next morning to decide. Next morning the appellant came at seven and renewed his threats, and demanded $1,000. Appellee was a farmer, who had always lived on his farm, and a person of weak mind, of little education and experience in business affairs, ignorant of the law and of his rights and liabilities as a witness, easily influenced and overcome by a person of strong mind; all of which was known to appellant, who was a shrewd and keen business man of more than ordinary skill and ability, of wide experience in business

and ways of the world, and known to appellee to be a man of force and determination.   Appellee believed that appellant could and would carry out his said threats, and was thereby put in fear of appellant, and by reason thereof, and against his will, and upon the appellant's promise not to prosecute nor molest him on account of said testimony, he paid him the sum of $900, which he seeks to recover.

Upon these facts, there was clearly no consideration for the payment of this money.   Neither the appellant nor his son had against appellee even a colorable claim of any kind whatsoever, arising from the testimony which he had given in good faith, without malice, believing it to be true, and which was responsive to questions by appellant's attorneys; nor had any crime been committed by appellee.

His statements, as a witness, under the circumstances, were absolutely privileged.   *Hutchinson* v. *Lewis*, 75 Ind. 55;  Townshend on Libel and Slander, section 223; *Nelson* v. *Robe*, 6 Blackf. 204;   *Grove* v. *Brandenburg*, 7 Blackf. 234;   1 Hilliard on Torts, 86;   Cooley on Torts, 210;  *Calkins* v. *Sumner*, 13 Wis. 193.

In *Stevens* v. *Rowe*, 59 N. H. 578, it is said:   "Public policy, and the safe administration of justice, require that witnesses, who are a necessary part of the judical machinery, be privileged against any restraint, excepting that imposed by the penalty for perjury."

In *United States, etc., Co.* v. *Henderson*, 111 Ind. 24, the court approves this language, used in *Warey* v. *Forst*, 102 Ind. 205:   "A threatened litigation founded merely on the defendant's belief, without any fact to support the belief, amounts to nothing, and the purpose to avoid such a litigation was no consideration for the plaintiff's promises."   *Jarvis* v. *Sutton*, 3 Ind. 289;

*Smith* v. *Boruff*, 75 Ind. 412; *Harris* v. *Cassady*, 107 Ind. 158.

Counsel for appellant vigorously contend that the payment was a voluntary one, and the money not recoverable, for that reason. With this proposition we can not agree.

Under the allegations of the pleading, the payment was not made by appellee of his own volition, but against his will, and because he was controlled by and overpowered with fear.

In *Bush* v. *Brown*, 49 Ind. 573, the law is thus expressed: "To give validity to a contract, the law requires the free assent of the party who is to become chargeable thereon; and it therefore avoids any promise extorted from him by terror or violence."

It is decided, by this case, that threats of prosecution and imprisonment upon an unfounded charge are such duress as avoids the contract.

"So, if a person executed an instrument from a well-grounded fear of illegal imprisonment, he may avoid it on the ground of duress." *Walker* v. *Larkin*, 127 Ind. 100.

Counsel for appellant argue that the threats were not sufficient to constitute duress, because not of such character as should have reasonably excited the fears actually caused, and cite *Hines* v. *Board, etc.*, 93 Ind. 266, and *Darling* v. *Hines*, 5 Ind. App. 319.

The case in hand is easily distinguished from those, by the fact that appellee was a man of weak mind, ignorant of the law and his rights, as was actually known to appellant. The threats made unquestionably did excite the fear and belief that appellant could and would carry them out.

It comes with an ill grace from appellant to say that appellee ought not to have been so badly scared.

We deem the law to have been well stated by MORSE, Judge, in the case of *Cribbs* v. *Sowle*, 87 Mich. 340, where it is said: "It has been held by some of the courts that mere threats of criminal prosecution, when neither warrant has been issued nor proceedings commenced, do not constitute duress. *Buchanan* v. *Sahlein*, 9 Mo. App. 552; *Higgins* v. *Brown*, 78 Me. 473; *Town Council* v. *Burnett*, 34 Ala. 400. And, by others, that a threat of arrest for which there is no ground does not constitute duress, as the party could not be put in fear thereby. *Knapp* v. *Hyde*, 60 Barb. 80; *Preston* v. *Boston*, 12 Pick. 12. But these rules do not seem to have any regard to the condition of the mind of the person acted upon by the threat, or to take into consideration the age, disposition or intellect of the person so threatened; and leave the old, the ignorant, the weak and the timid at the mercy of the bully or the scoundrel who operates upon their fears to extort money from them. Truly, to such an action as this, the defendant who, without semblance of any legal or moral right or claim, has scared money out of an old man, can not well set up any defense of the policy of the law that it was the duty of the injured party to have resorted to the courts in the first place, or withstood the threat of being taken there until proceedings were actually begun, to defend himself from the extortion. Nor, in my opinion, is it the true policy of the law to make an arbitrary and unyielding rule in such cases, to apply to all alike, without regard to age, sex or condition of mind. Weak and cowardly people, and old and ignorant persons, are the ones that need the protection of the courts, and they are the ones usually operated upon and influenced by threats and menaces."

In cases of fraud, it is recognized that representations may be effectual in dealing with a weak-minded, ignorant man, which ought not to be relied upon by a man of

ordinary knowledge and intellect.    *Ingalls* v. *Miller*, 121 Ind. 188.

Our conclusion, therefore, is that the complaint shows the payment of the money was procured without any consideration and by duress through such threats as, considering all the circumstances and comparative abili-ties of the parties, were reasonably calculated to and did overcome the will of appellee.    It was therefore good. *Line, Admx.*, v. *Blizzard*, 70 Ind. 23; *Adams* v. *Stringer*, 78 Ind. 175.

The special verdict contains some facts evidentiary merely, and some mere conclusions, yet when stripped of all unnecessary matter, it contains sufficient facts, well founded, to sustain the material allegations of the com-plaint.    What we have already said in considering the sufficiency of the complaint, meets most of the objections urged to the verdict.

The verdict shows that appellant and his son executed to appellee an agreement not to prosecute or molest him on account of his testimony.

. There was no necessity for a return of this agreement by appellee; it was wholly valueless, and conferred noth-ing upon appellee, and no rights were by it surrendered by appellant or his son.

"Where a contract is void, or, if being merely voidable, no rights have been actually surrendered, and no benefits acquired under it, since in either case the contract has conferred nothing, there is nothing to restore."    *Higham* v. *Harris*, 108 Ind. 246.

Neither was any demand for the return of the money required before suit, because the possession of the money was wrongfully obtained by means of a voidable contract, and the appellee received nothing of value for it.    *Thomp-son* v. *Peck*, 115 Ind. 512.

The able counsel for appellant have urged with great

ingenuity and plausibility many objections in this case which we have not deemed it necessary to set out in detail. Those which appeared to us the most important, we have discussed in this opinion. Others have been considered, but we are unable to find any cause for reversal. On the other hand, we are convinced that a just and proper conclusion has been reached, so far as disclosed by the record before us.

The judgment is affirmed.

REINHARD, J., absent.

Filed Dec. 12, 1893.