William M. GIFFIN, Plaintiff–Appellant,

v.

Jack SUMMERLIN, M.D., Defendant–Appellee.

No. 94–2100.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 20, 1995 *.

Decided March 15, 1996.

---

* After preliminary examination of the parties' briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed. R.App. P. 34(a); Cir. R. 34(f). Appellant has filed a statement requesting oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and the record.

William M. Giffin, (submitted), Springfield, IL, pro se.

David S. Allen, Todd J. Kaiser, Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, for Jack Summerlin, M.D.

Before CUMMINGS, KANNE and ROVNER, Circuit Judges.

PER CURIAM.

In this diversity action governed by Indiana law, William M. Giffin sued his treating physician Dr. Jack Summerlin for giving unfavorable deposition testimony in a malpractice lawsuit that Giffin brought against a previous treating physician. Giffin asserted that Dr. Summerlin owed him a duty to refrain from assisting his adversary in the malpractice litigation, and that Dr. Summerlin's breach of that duty gave rise to a cause of action for a violation of the confidential relationship between physician and patient. The district court granted summary judgment in favor of Dr. Summerlin. We hold that Dr. Summerlin is shielded from civil liability for his testimony under the doctrine of witness immunity, and we affirm.

## BACKGROUND

This case arose out of a medical malpractice action filed by Giffin following plastic surgery he underwent in 1981 at Presbyterian University Hospital in Pittsburgh, Pennsylvania to correct a snarl on the left side of his face. The surgery, which was performed by Dr. J.W. Futrell, left Giffin facially disfigured by completely paralyzing the left center portion of his face. Giffin then saw Dr. Summerlin, a reconstructive surgeon in Indianapolis, Indiana, who performed five operations between 1982 and 1984 that improved Giffin's appearance and facial condition.

In November 1983, Giffin's attorney wrote Dr. Summerlin, asking him to respond to a set of five questions concerning the merit of a malpractice action against Dr. Futrell that Giffin was contemplating. Dr. Summerlin completed the questionnaire and promptly returned it to Giffin's attorney. Dr. Sum-

merlin's responses reflected his belief that Dr. Futrell complied with the standard of care in treating Giffin.[1]

In spite of Dr. Summerlin's views, Giffin brought a malpractice lawsuit in Pennsylvania state court in December 1983 against Dr. Futrell and Presbyterian University Hospital ("Pennsylvania litigation"). The case lingered in the state court for several years. In August 1990, counsel for Dr. Futrell sent Dr. Summerlin a request for any medical records relating to Giffin, and enclosed a medical release authorization signed by Giffin.[2] Pursuant to that authorization, Dr. Summerlin furnished Dr. Futrell's attorney with the November 1983 letter from Giffin's counsel and his responses to the questionnaire.

On June 5, 1991, shortly before the Pennsylvania litigation was scheduled to go to trial, Dr. Summerlin was deposed in Indianapolis by counsel for both Giffin and Dr. Futrell. According to Giffin, Dr. Summerlin agreed before the depositions to testify only about the surgeries he had performed on Giffin and not about any possible negligence or malpractice on the part of Dr. Futrell.

Dr. Summerlin did not limit the scope of his deposition testimony, however. At the first deposition, which was taken by Giffin's attorney, Dr. Summerlin testified on cross-examination that the procedure used by Dr. Futrell to treat Giffin's disfiguring snarl was an accepted method and had been performed within the standard of care. (R. 17, Ex. E at 31, 49.) At the second deposition, conducted by Dr. Futrell's counsel in the presence of Giffin and Giffin's attorney, Dr. Summerlin testified that he believed Dr. Futrell's operation was "an appropriate approach for the

problem that existed" and that Dr. Futrell "performed with the skills that you would usually allow for that type [of] surgery." (R. 17, Ex. F at 18, 21.) At no time did Giffin's counsel object to any of Dr. Summerlin's testimony on the basis of the patient-physician privilege.

The parties proceeded with jury selection on January 7, 1991, and then initiated settlement negotiations. In April 1991, Giffin agreed to accept $21,000 as a settlement in exchange for his release of all claims arising out of the Pennsylvania litigation.

Giffin, proceeding pro se, filed this present action in January 1993. Giffin alleged that Dr. Summerlin breached the physician-patient privilege and the confidential relationship between physician and patient by speaking with Dr. Futrell's counsel outside the presence of Giffin's counsel and by testifying at his depositions that it was his opinion that Dr. Futrell was not negligent. Specifically, Giffin alleged that Dr. Summerlin provided "extra judicial interviews" to Dr. Futrell's attorney; gave false testimony in support of Dr. Futrell; testified as an expert witness for Dr. Futrell contrary to Giffin's interests; breached his fiduciary duty to Giffin; provided Dr. Futrell's attorney with work product of Giffin's own counsel; misled Giffin and Giffin's attorney about the nature of his testimony; and showed loyalty to Dr. Futrell rather than Giffin. As a direct and proximate result of these acts, Giffin alleged, the Pennsylvania litigation was "rendered winless" and he was "compelled" to settle for $21,000. Giffin's complaint also included one count for breach of implied contract and one count for breach of express contract. Giffin based his claims exclusively upon Dr. Sum-

---

1. The five questions and Dr. Summerlin's answers are as follows:
   1. Was the surgery indicated?
      Yes.
   2. If so, was it properly performed?
      Yes.
   3. Was the parotid gland damaged in the surgery?
      No.
   4. Would the parotid gland have been damaged had the surgery been performed properly?
      [No response.]
   5. In you [sic] opinion, based upon reasonable medical certainty, did Dr. Futrell in any

phase of his treatment of Mr. Giffin of which you are aware depart from the standards of professional skill required?
No.
(R. 27, Ex. K.)

2. This authorization, which Giffin signed in July 1990, allowed Dr. Summerlin to release to counsel for Dr. Futrell "any and all information with respect to my medical history ... including copies of all hospital and medical records, ... reports, correspondence, ... and any other documents or writings relating to me which are in your possession." (R. 27, Ex. J.)

merlin's reports and deposition testimony provided in connection with the Pennsylvania litigation.

■ Dr. Summerlin moved for summary judgment, which the district court granted in February 1994.[3] The court held that Giffin had waived the physician-patient privilege when he filed his Pennsylvania action. The court also found that the alleged contract was unenforceable, if one even existed, because it violated a public policy of favoring full and true testimony.

In April 1994, the court denied Giffin's motion for reconsideration.

## DISCUSSION

■ As a threshold matter, we consider whether Dr. Summerlin is entitled to absolute immunity from civil liability for his deposition testimony as a witness in the Pennsylvania litigation. The district court did not address this issue in its order granting summary judgment,[4] and on appeal Dr. Summerlin renews his contention that he is immune from all civil liability regarding his deposition testimony. We of course may affirm the judgment of the district court on any ground supported by the record. *Taylor v. Canteen Corp.*, 69 F.3d 773, 784 (7th Cir.1995).

■ Whether the deposition testimony of a witness renders that witness absolutely immune from civil suit is a question of first impression under Indiana law, which the parties agree is controlling here.[5] As a federal court sitting in diversity, we must best estimate how the Indiana Supreme Court would rule as to its law. See *Shirley v. Russell*, 69 F.3d 839, 843 (7th Cir.1995).

■ Indiana courts have long afforded witnesses absolute immunity from civil suit for their testimony in judicial proceedings. See *Hutchinson v. Lewis*, 75 Ind. 55, 60–61 (1881) ("All statements of a witness, as a general rule, are absolutely privileged."); *Hamed v. Pfeifer*, 647 N.E.2d 669, 672 (Ind. Ct.App.1995) (citing *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)); *Hill v. Beghin*, 644 N.E.2d 893, 897 (Ind.Ct.App.1994) (medical opinion in worker's compensation proceeding); *Briggs v. Clinton County Bank & Trust Co. of Frankfort, Ind.*, 452 N.E.2d 989, 997 (Ind. Ct.App.1983) (defamatory allegations contained in pleadings); *Rhiver v. Rietman*, 148 Ind.App. 266, 265 N.E.2d 245, 248 (1970) (medical opinion in mental illness commitment proceeding). Public policy requires that " 'witnesses, who are a necessary part of the judicial machinery, be privileged against any restraint, excepting that imposed by the penalty for perjury.' " *Rhiver*, 265 N.E.2d at 248 (quoting *Baldwin v. Hutchison*, 8 Ind.App. 454, 35 N.E. 711, 712 (1893)). The purpose of witness immunity is to ensure that the judicial system

---

**3.** Applying Indiana choice of law rules, the district court determined that Giffin's claims were governed by Indiana law. Indiana applies a "most significant contacts" approach to tort claims, inquiring whether the connection between the place of the tort and the legal action is significant. *Jean v. Dugan*, 20 F.3d 255, 261 (7th Cir.1994) (citing *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind.1987)). The district court found that Dr. Summerlin's alleged wrongdoing occurred when he gave testimony at his depositions in Indianapolis. Since Indiana had a significant connection to the litigation, the district court ruled that Indiana law was controlling.

**4.** The district court granted summary judgment in part on the basis that Giffin had waived the evidentiary privilege protecting private communications between a physician and patient. See Ind.Code § 34–1–14–5(3). Giffin's cause of action, however, stems not from this evidentiary privilege but rather from the physician's legal

duty to maintain the confidentiality of communications between the physician and patient. Although we have found no Indiana cases on point, other jurisdictions recognize the existence of such a physician-patient confidential relationship and distinguish it from the evidentiary physician-patient privilege. See generally Note, The PhysicianPatient Relationship: The Permissibility of Ex Parte Communications between Plaintiff's Treating Physicians and Defense Counsel, 59 Mo. L.Rev. 441 (1994). In light of the dispositive effect of witness immunity, we need not further explore that distinction here.

**5.** Although the Pennsylvania litigation was carried out in Pennsylvania state court, we agree with the district court that the site of Dr. Summerlin's depositions-Indianapolis—constitutes the most significant connection to this litigation and thus warrants the application of Indiana law. In any event, we discern no substantive conflict between the laws of Pennsylvania and Indiana on the relevant issues in this case.

functions unimpeded by fear on the part of its participants that they may be sued for damages for their role in the proceedings. See *Briggs,* 452 N.E.2d at 997.

▮ The policy considerations underlying witness immunity for testimony in open court apply with equal force to other forms of testimony such as depositions and affidavits. *Kahn v. Burman,* 673 F.Supp. 210, 212 (E.D.Mich.1987), aff'd. without opinion, 878 F.2d 1436 (6th Cir.1989); *Collins v. Walden,* 613 F.Supp. 1306, 1314 (N.D.Ga.1985); aff'd without opinion, 784 F.2d 402 (11th Cir.1986); *Moore v. Conliffe,* 7 Cal.4th 634, 29 Cal. Rptr.2d 152, 156–57, 871 P.2d 204, 208–09 (1994); *Stolte v. Blackstone,* 213 Neb. 113, 328 N.W.2d 462, 466 (1982); *Darragh v. Superior Court in and for County of Maricopa,* 183 Ariz. 79, 900 P.2d 1215, 1217–18 (1995). The threat of a lawsuit for damages can have the same intimidating effect on a witness who testifies by deposition as one who testifies in court. Testimony by deposition is an important part of the judicial process and merits the same protection as in-court testimony.

The only authority Giffin cited to the district court to oppose Dr. Summerlin's request for witness immunity was the dissenting opinion in *Moses v. McWilliams,* 379 Pa.Super. 150, 549 A.2d 950 (1988) (en banc), appeal denied, 521 Pa. 630, 631, 558 A.2d 532 (1989). In *Moses,* plaintiff's treating physician disclosed information about plaintiff's medical condition to plaintiff's adversary in a malpractice action, even though plaintiff had not consented to these disclosures. Plaintiff's physician also testified at trial as a fact witness. Plaintiff then sued her physician in tort, claiming that his unauthorized communications with her adversary in the malpractice litigation were actionable as a breach of the physician-patient confidential relationship. *Id.,* 549 A.2d at 953–54. A majority of the en banc court held that because the plaintiff's physician had a right to participate in litigation as an ordinary fact witness, his statements to defense counsel during the pretrial stage of litigation were absolutely privileged; therefore, he could not be held liable for breach of confidentiality. *Id.* at 956, 958. The dissent in *Moses,* however, disagreed that the physician deserved immunity for his statements. Because the confidential relationship between patient and physician "outweighs even the policy to promote truth-finding in judicial ... proceedings," *id.* at 970 (Cirillo, J., dissenting), the dissent urged that absolute immunity in such situations be rejected and that a cause of action be recognized for a physician's breach of confidentiality. *Id.*

Despite Giffin's convenient advice that "when you want to find a great opinion you look to a dissent," (R. 32, at 3), we, like the majority in *Moses,* find the dissent's position unpersuasive. As the majority observed, an immunity analysis depends upon functional categories rather than upon the status of a witness:

> The judicial process depends on the functions of its various "players," and immunity is granted in order to facilitate the judicial process. A doctor-witness who is testifying as a fact witness performs the same function as any other witness: to present evidence through testimony to aid the tribunal in its truth-finding function. The functioning of the tribunal is seriously handicapped if witnesses, whether they be doctors or lay persons, fear liability from statements made by them that have some relation to the litigation.

549 A.2d at 958 n. 11 (also citing *Briscoe v. LaHue*). We reach the same conclusion here and hold that Dr. Summerlin, as a witness who gave deposition testimony in connection with a judicial proceeding, is absolutely immune from civil liability arising from that testimony.

▮ Finally, in his reply brief, Giffin argues that Dr. Summerlin violated Indiana's work product privilege, see Ind. Trial R. 26(B)(3), when he forwarded to Dr. Futrell's attorney a copy of the completed questionnaire that he had prepared for Giffin's attorney in November 1983. Because Giffin raised this argument for the first time in his reply brief, it is waived. Circuit Rule 28(f); *Maher v. Harris Trust & Sav. Bank,* 75 F.3d 1182, 1191 (7th Cir.1996). We note, furthermore, that Giffin signed an unqualified authorization in July 1990 permitting Dr. Summerlin to send to Dr. Futrell "copies of all ... reports, correspondence, ... and any other

documents or writings relating to me which are in your possession." In any event, the work product privilege refers to a rule of discovery and is not implicated in this case. Cf. *Indiana State Bd. of Pub. Welfare v. Tioga Pines Living Ctr.*, 592 N.E.2d 1274, 1276 (Ind.Ct.App.1992) (applying work product privilege).

The judgment of the district court is AFFIRMED.