134 F.3d 375
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Robert J. VAN KOTEN, Plaintiff-Appellant,
v.
FAMILY HEALTH MANAGEMENT, INC., and Chiromed Physicians,
P.C., Defendants-Appellees.
 No. 97-1294.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 16, 1997.
Decided Feb. 6, 1998.
 
 Before Hon. JESSE E. ESCHBACH, Hon. JOEL M. FLAUM, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 Dr. Robert J. Van Koten filed a complaint alleging that the defendants willfully and intentionally discriminated against him by discharging him because of his religious beliefs in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq. The district court granted the defendants' motion for summary judgment, finding that Van Koten failed to demonstrate a genuine issue of material fact over whether the defendants had knowledge of his religious beliefs. On appeal Van Koten argues that the defendants did have knowledge of his religious beliefs. We affirm the district court's decision, although on the different ground that Van Koten failed to show that there was a genuine issue of material fact that the nondiscriminatory reason given for his discharge was a pretext for religious discrimination.
 
 
 2
 Van Koten is a licensed chiropractor in Illinois. He asserts that he has held a sincere and bona-fide belief in the Wiccian religion since 1973. He describes the Wiccian religion (also known as Wicca, the Craft, or the Old Religion) as "a monistic and pantheistic, positive, shamanistic, nature based religion that is predicated on a simple set of ethics and morality which promulgates avoidance of harm to other people, promoting brotherly love and harmony with, and respect for, all life forms." Van Koten's religious beliefs include that Halloween is a holy day, respect for all life and consequently a vegetarian diet, astrology, psychic abilities, and reincarnation.
 
 
 3
 Van Koten was hired by Family Health Management (FHM) as a chiropractor on September 21, 1994. Although his contract was with FHM, he was "leased out" to Chiromed Physicians (Chiromed). On November 1, 1994, Chris Meinecke, the clinic manager, approached Van Koten and accused him of not following proper procedure by failing to fill out a diagnosis form on a patient. Van Koten responded by stating "fuck the procedure." Van Koten argues that he always followed the defendants' procedures and that he believed that forms had to be filled out only when a patient paid for services through insurance, rather than out-of-pocket.
 
 
 4
 On November 2, 1994, Duane F. Meyers, the sole shareholder and chief executive officer of FHM and Chiromed, discharged Van Koten allegedly due to his "profane refusal to follow procedures which were required in his employment." Van Koten states that on November 2, Meyers told him during a lunch discussion that, "I think it's time we go our separate ways," and made a comment about "trying to fit a square peg into a round hole." Van Koten also asserts that he asked why he was being terminated and Meyers responded, "I don't want this to be a character assassination."
 
 
 5
 The defendants moved for summary judgment on the basis that Meyers was not aware of Van Koten's religion and therefore could not have been motivated to discharge him on the basis of his religious beliefs. Meyers stated in an affidavit that he was not advised of any of Van Koten's religious beliefs until after Van Koten was terminated. Meyers asserts that the first time he learned of Van Koten's religious beliefs was when he received a notice of right to sue from the Illinois Department of Human Rights dated November 18, 1994.
 
 
 6
 Van Koten argues that the defendants, and Meyers in particular, knew about his religious beliefs. The only direct evidence that Van Koten had presented a religious belief to Meyers occurred on or about October 15, 1994, when Van Koten had a discussion with Meyers over lunch. During this conversation, Van Koten informed Meyers "that he had purchased a vegetarian meal because he was a vegetarian due to his religious beliefs."
 
 
 7
 In addition to directly informing Meyers of his religious belief in a vegetarian diet, Van Koten states that there is a possibility that Meyers might also have learned of his religious beliefs from co-workers. However, Van Koten admitted at his deposition that he never used the word Wicca at work. Van Koten installed a program on his office computer that allowed him to prepare astrology charts during non-business hours. Van Koten believes that he uses psychic abilities to orally interpret these charts. He prepared astrology charts and gave oral interpretations to those co-workers who requested them for themselves or their families. As part of his interpretation of the charts, he referred to the sun as the father and the moon as the mother. Van Koten argues that in making these references, he communicated that he believed that the sun and moon were gods. Van Koten asserts that any of the employees that he prepared astrology charts for could have informed Meyers of his belief in astrology. Additionally, Van Koten states that Meyers could have learned of his religious belief in astrology on or about October 20, 1996, when Meyers observed a crowd of people gathered around Van Koten's office and was informed by an employee that Van Koten was preparing astrology charts. However, Van Koten stated at his deposition that he never informed anyone at work that astrology was part of his religion.
 
 
 8
 Van Koten also argues that Meyers could have learned of his religious belief that Halloween was a holy day. On October 31, 1994, Van Koten stated in front of several co-workers, including Meinecke, Cheryl Wilkinson, Bonnie Lauff, and Randy Provick, that he considered Halloween to be the "holiest day of the year in his religion." Van Koten further argues that the proximity between making this statement and his discharge two days later supports that his termination was motivated by his religious beliefs.
 
 
 9
 Lastly, Van Koten asserts that an inference can be drawn that Provick informed Meyers of Van Koten's religious beliefs. In addition to hearing his statement about Halloween, Van Koten states that "[o]n previous occasions Provick made unsolicited comments to [him] about being 'brutally agnostic' and asked [him] probing questions regarding [his] belief system." Van Koten argues that Provick had ample opportunity to tell Meyers about Van Koten's statement that Halloween was his holiest day, because on November 1, 1994, Meyers spent two to three hours with Provick in Provick's office with the door closed.
 
 
 10
 Under Title VII it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 2000e-2(a)(1). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). "[A]n unlawful employment practice is established when the complaining party demonstrates that ... religion ... was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).
 
 
 11
 This court reviews a district court's grant of summary judgment de novo. Venters v. City of Delphi, 123 F.3d 956, 962 (7th Cir.1997). "Summary judgment is appropriate when the record, viewed in a light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Vector-Springfield Properties, Ltd. v. Central Ill. Light Co., Inc. ., 108 F.3d 806, 809 (7th Cir.1997) (citing Fed.R.Civ.P. 56(c)). A plaintiff in an employment discrimination case must present more than conclusory allegations to defeat a motion for summary judgment. Mills v. First Federal Sav. & Loan Ass'n of Belvidere, 83 F.3d 833, 840 (7th Cir.1996). The mere existence of some alleged factual dispute is insufficient to defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
 
 
 12
 As there was no direct evidence of discrimination in this case, the district court properly applied the indirect, burden-shifting approach established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Helland v. South Bend Community Sch. Corp., 93 F.3d 327, 329 (7th Cir.1996), cert. denied, 519 U.S. 1092, 117 S.Ct. 769, 136 L.Ed.2d 715 (1997). In McDonnell Douglas, the Supreme Court noted that the elements of the prima facie case may vary depending on the facts presented in Title VII cases. 411 U.S. at 802. The district court stated that a claimant normally meets the burden of establishing a prima facie case if he demonstrates that he: (1) is a member of a protected class; (2) was qualified for the job in question; (3) was discharged; and (4) that the position remained open after his discharge to similarly qualified candidates. The district court also stated that this case requires the claimant, as part of his prima facie test, to establish an additional element; (5) that the employer had knowledge of the employee's religious beliefs. The district court determined that Van Koten met each of the factors of the prima facie test except for the newly added knowledge requirement.
 
 
 13
 Although the district court based its determination on the use of the above prima facie test, we need not consider if this is the appropriate test because "[w]e of course may affirm the judgment of the district court on any ground supported by the record ." Giffin v. Summerlin, 78 F.3d 1227, 1230 (7th Cir.1996). The record contains sufficient information for this court to assume that a prima facie case had been made, and affirm the district court's judgment because Van Koten failed to raise a genuine issue of material fact that the legitimate nondiscriminatory reason given for his discharge was a pretext for religious discrimination. "This court may advance to an ultimate issue in a summary judgment analysis and consider the discrimination question notwithstanding a dispute over a fact necessary for a prima facie case." EEOC v. Our Lady of Resurrection Med. Ctr., 77 F.3d 145, 149 (7th Cir.1996); see Chiaramonte v. Fashion Bed Group, Inc., No. 96-2987, slip op at 11-12 (7th Cir. Nov. 4, 1997).
 
 
 14
 Although the defendants' brief does not include a detailed discussion of the reason for discharging Van Koten, it does explain that he was fired because of his "profane refusal to follow procedures." The record also contains sufficient documentation to establish a legitimate reason for discharge. "Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." United States Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).
 
 
 15
 The defendants reference to a profane refusal to follow procedure relates to Van Koten's response of "fuck the procedure" to Meinecke on November 1, 1994. Van Koten admits that he made this comment. The defendants documented that Van Koten made this statement and failed to follow procedures in: (1) a "Key Incident Report" dated November 1, 1994, written by MaLeesa Meyers from a discussion with Meinecke; (2) a "Report of Employee Termination" dated November 2, 1994; and (3) a "Key Incident Report" dated November 2, 1994, written by MaLeesa Meyers from a discussion with Provick on November 2, 1994. Duane Meyers also stated in his answers to interrogatories that Van Koten was fired for making this profane comment. The record contains additional documentation from November 1 and 2, that shows that Van Koten frequently left morning meetings early, belittled staff, acted callous and shallow, and was rude to patients. Based on the information available in the record, the defendants gave a legitimate, nondiscriminatory reason for discharging Van Koten.
 
 
 16
 Van Koten asserts that the reason for his discharge was a pretext for religious discrimination. He first argues that the fact that his discharge occurred only two days after his statement that Halloween is a holy day, supports a finding of pretext. Although, the proximity between adverse employment actions and allegedly discriminatory incidents can imply a genuine issue of material fact over the cause of discharge, such is not the case here. See Dey v. Colt Const. & Dev. Co., 28 F.3d 1446, 1458-59 (7th Cir.1994). Regardless of whether the prima facie test for this case would include a knowledge requirement, defendants' knowledge of Van Koten's religious beliefs would also be relevant to the issue of pretext. Smith v. Cook County, 74 F.3d 829, 834 (7th Cir.1996) (the same evidence can be relevant to both the prima facie case and to the question of pretext). The record does not support a finding that there is a genuine issue of material fact that Meyers was unaware that Halloween was a holy day for Van Koten. Van Koten attempts to argue that Meyers could have learned of this belief from an employee who heard Van Koten state that Halloween was a holy day. However, subjective beliefs and speculation of a plaintiff are insufficient to create a genuine issue of material fact. Mills, 83 F.3d at 841-42; Hedberg v. Indiana Bell Tel. Co., Inc., 47 F.3d 928, 933 (7th Cir.1995). Further, this court has held that an employee's desired inference that a co-worker informed decisionmakers of his disability prior to his discharge was not reasonable and was "unsupported speculation." Hedberg, 47 F.3d at 931-32. In fact, the only religious belief that Van Koten has demonstrated Meyers knew of was that he was a vegetarian for religious reasons.
 
 
 17
 Van Koten also argues that the documentation of his performance "contain[s] several suspicious, or at the vary[sic] least odd, statements which are suggestive of pretext." He states that it is suspicious that MaLeesa Meyers, Duane Meyer's wife, asked Provick "if he observed any problems w[ith] Dr. Van Koten's behavior," as reflected in a November 2 Key Incident Report, Van Koten also asserts that a phone message that Duane Meyers submitted with his answers to interrogatories indicates that they were anticipating some form of litigation or inquiry with respect to the decision to terminate him.[1] However, Van Koten's subjective belief that the Key Incident Report and phone message are evidence of pretext does not create a genuine issue of material fact. Mills, 83 F.3d at 841-42. Therefore, Van Koten failed to demonstrate that there was a genuine issue of material fact that the reason given for his discharge was pretextual.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 The message states, "Betty Baebler had a problem with Dr. Van Koten. Betty (a patient) spoke w[ith] Sheryl re[garding] Dr. Van Koten. You may want to consider calling her as a witness." The message does not have any other information filled in, such as the date or for whom the message was written